222 P.3d 280

**T.P. RACING, L.L.L.P. dba Turf Paradise Race Track, Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF RACING, a department of the Executive Branch of the State of Arizona, Defendant/Appellee.**

No. 1 CA–CV 08–0733.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 22, 2009.

Jennings Strouss & Salmon PLC, by Gerald W. Alston, and Douglas Gerlach, Phoenix, Attorneys for Appellant.

Terry Goddard, Attorney General, by Camila Alarcon, Assistant Attorney General, and Mary DeLaat Williams, Assistant Attorney General, Phoenix, Attorneys for Appellee.

## OPINION

SWANN, Presiding Judge.

¶ 1 T.P. Racing, L.L.L.P. d/b/a/ Turf Paradise Race Track ("Turf Paradise") appeals from the trial court's grant of the Arizona Department of Racing's ("ADOR") motion to dismiss its action seeking a refund of charges paid in connection with the renewal of its racing license. We are asked to determine whether A.R.S. § 5–107.01 and related statutes permit ADOR to pass to license applicants the costs incurred in conducting a full background investigation. We hold that ADOR is statutorily authorized to charge such costs, and for the reasons set forth below we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This case arises from a dispute over $61,261.25 that ADOR charged Turf Paradise for expenses incurred when the department conducted a background investigation of Turf Paradise in connection with the renewal of its racing permit. Turf Paradise claims that ADOR exceeded its statutory authority by charging for expenses beyond those incurred in connection with the criminal history phase of the background investigation.

¶ 3 In May 2006, Turf Paradise sought to renew its permit to conduct horse racing in Arizona. ADOR informed Turf Paradise that it had retained the services of a Certified Public Accountant ("CPA") and a professional investigator, and that it expected to incur other administrative expenses to perform a review of the renewal application. ADOR estimated that the expenses would be as follows: CPA services: $15,000; professional investigative services: $15,000; and department expenses: $20,000. The correspondence also stated that Turf Paradise was required to bear the cost of these expenses pursuant to A.R.S. § 5–107.01. Turf Paradise paid the requested $50,000.

¶ 4 In August 2006, ADOR again wrote to Turf Paradise and requested an additional $15,000 for professional investigative services. Under protest, Turf Paradise paid the additional costs[1] and the Arizona Racing

---

1. The actual cost incurred by ADOR and paid by Turf Paradise was $11,261.25.

Commission ultimately approved its renewal application in November 2006.

¶ 5 Turf Paradise served a Notice of Claim on ADOR and the Attorney General's Office in which it challenged ADOR's authority to charge these costs. The Notice of Claim was denied. On August 1, 2007, Turf Paradise filed a complaint in the superior court, alleging that A.R.S. § 5–107.01 only authorizes ADOR to charge an applicant for the expenses incurred to conduct a criminal history background investigation. In support of its claim, Turf Paradise asserted that the provisions of § 41–1750, which is referenced in § 5–107.01, "deal with the Central State repository of Information to be used by various state agencies in doing background investigations into criminal history and related criminal justice information." In its complaint, Turf Paradise sought the return of the $61,261.25 paid to ADOR plus interest, as well as attorneys' fees and costs.

¶ 6 In May 2008, ADOR filed a motion to dismiss, arguing that the court should treat the action as one for declaratory judgment because the only justiciable issue that Turf Paradise had raised was a question of statutory construction. On the merits of that question, ADOR argued that A.R.S. § 5–107.01 authorizes it to charge applicants for costs incurred to conduct complete background investigations, which are not limited to criminal history.

¶ 7 Based solely on the legal arguments presented, the superior court ruled in favor of ADOR. Treating the complaint as a request for declaratory judgment, the court entered judgment dismissing Turf Paradise's complaint on August 20, 2008.[2] Turf Paradise timely appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

**STANDARD OF REVIEW**

■■■ ¶ 8 Generally, we review a trial court's grant of a motion to dismiss for abuse of discretion, but we review issues of statutory interpretation de novo. *Dressler v. Morrison*, 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006). In our review of the "trial court's decision granting a motion to dismiss, we assume the truth of the allegations set forth in the complaint and uphold dismissal only if the plaintiffs would not be entitled to relief under any facts susceptible of proof in the statement of the claim." *Mohave Disposal, Inc. v. City of Kingman*, 186 Ariz. 343, 346, 922 P.2d 308, 311 (1996) (citing *Menendez v. Paddock Pool Constr. Co.*, 172 Ariz. 258, 836 P.2d 968 (App.1991)).

**DISCUSSION**

**I. Costs of the Background Investigation**

■■■ ¶ 9 The issue presented here is one of statutory interpretation. "In interpreting statutes, our central goal 'is to determine and give effect to the legislature's intent.' " *Yarbrough v. Montoya–Paez*, 214 Ariz. 1, 5, ¶ 12, 147 P.3d 755, 759 (App.2006) (quoting *Washburn v. Pima County*, 206 Ariz. 571, 575, ¶ 9, 81 P.3d 1030, 1034 (App.2003)). "To determine legislative intent, we look first to the language the legislature has used as providing 'the most reliable evidence of its intent.' " *Id.* (quoting *Walker v. City of Scottsdale*, 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App. 1989); citing *State v. Sepahi*, 206 Ariz. 321, 324, ¶ 16, 78 P.3d 732, 735 (2003); *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)). We must also construe statutory provisions in a manner consistent with related provisions. *Goulder v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993). This case turns on the meaning of the phrase "background investigation" as it is used in

2. The minute entry ruling indicated that there were issues remaining in the case, namely whether particular line item expenses were reasonably incurred in furtherance of ADOR's authority to conduct its background investigation of Turf Paradise. Below, Turf Paradise objected to the form of the judgment that was proposed by ADOR, arguing that the court's ruling with respect to the declaratory judgment did not dispose of the reasonableness issue. In response, ADOR argued that Turf Paradise failed to assert the reasonableness claim in its complaint. The final judgment in the form proposed by ADOR was adopted by the superior court, and expressly states that there are no remaining issues. Turf Paradise does not quarrel with the form of judgment on appeal, and we therefore need not consider any other issues. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App.2000).

A.R.S. § 5–107.01 (2002), and the extent to which ADOR can pass on to racing license applicants the expenses incurred during the course of such an investigation.

¶ 10 In Arizona, gambling is highly regulated. *See Simms v. Napolitano,* 205 Ariz. 500, 504–05, ¶ 21, 73 P.3d 631, 635–36 (App. 2003). Title 5, chapter 1 sets forth the statutory scheme by which horse and dog racing is regulated, including the procedures required to obtain permits and licenses. A.R.S. §§ 5–104, –107.01, and –108 work together to authorize and require ADOR to conduct a thorough investigation of those applicants seeking a license or permit, and A.R.S. § 5–107.01(E) expressly requires an applicant to pay for fingerprint fees and costs associated with ADOR's investigation.[3] Section 5–107.01(E) provides:

> All applicants for a permit or license shall Submit [sic] to the department a full set of fingerprints, background information and the fees that are required pursuant to § 41–1750. the [sic] department of racing shall submit the fingerprints to the department of public safety for the purpose of obtaining a state and federal criminal records check pursuant to § 41–1750 and public law 92–544. The department of public safety may exchange this fingerprint data with the federal bureau of investigation. *The applicant shall pay the fingerprint fee and costs of the background investigation in an amount that is determined by the department.* For such purpose the department of racing and the department of public safety may enter into an intergovernmental agreement pursuant to title 11, chapter 7, article 3. The fees shall be credited pursuant to § 35–148.

(Footnote omitted.) (Emphasis added.)

■ ¶ 11 Both parties agree, as they must, that A.R.S. § 5–107.01(E) requires the applicant to shoulder the costs of the fingerprint fee and the costs of the background investigation. Turf Paradise, however, contends that the term "background investigation" as

used in § 5–107.01(E) is limited in scope to ascertaining an applicant's criminal history under A.R.S. § 41–1750 (Supp.2008).[4] We disagree.

¶ 12 We are unpersuaded by Turf Paradise's argument that the reference to § 41–1750 found in A.R.S. § 5–107.01(E) necessarily limits the scope of the background investigation to an inquiry into an applicant's criminal history. In § 5–107.01 the Legislature uses the conjunctive to require that an applicant pay for fingerprint fees *and* costs of a background investigation. We cannot, therefore, construe the phrase "fingerprint fee" as synonymous with or a substitute for the phrase "costs of the background investigation." *See, e.g., City of Phoenix v. Yates,* 69 Ariz. 68, 72, 208 P.2d 1147, 1149 (1949) (When interpreting a statute, "[e]ach word, phrase, clause, and sentence must be given meaning so that no part will be void, inert, redundant, or trivial."). Further, an examination of § 41–1750, in which the phrase "background investigation" is noticeably absent, reveals that the Director of the Department of Public Safety is authorized to exchange information with ADOR when Arizona law specifically authorizes a noncriminal justice agency to "receive criminal history record information for the purpose of *evaluating the fitness of current or prospective licensees ... on submission of the subject's fingerprints and the prescribed fee.*" A.R.S. § 41–1750(G)(2) (emphasis added). The director is authorized to set the amount of the prescribed fee. A.R.S. § 41–1750(J). Accordingly, we conclude that the "fees that are required pursuant to § 41–1750" referenced in A.R.S. § 5–107.01(E) pertain only to fingerprint fees. That the reference to § 41–1750 relates only to the fingerprint fees, however, does not answer the question whether ADOR has authority to conduct a more probing investigation and pass the costs to an applicant. To answer that question, we turn to the related statutes in title 5, chapter 1.

**3.** In contrast, A.R.S. § 5–104.01(D) permits ADOR to expend monies to conduct special investigations of those who have already obtained a license or permit to determine compliance with chapter 1.

**4.** We cite to the current version of the statute when no material changes relevant to our decision have since occurred.

¶ 13 Although "background investigation" is not defined in A.R.S. § 5–101, the statutory provisions contained in chapter 1 indicate that the phrase includes an inquiry into both the applicant's criminal background and the more general character of an applicant. On this point, A.R.S. § 5–104(N) is instructive. Section 5–104(N) provides in relevant part: "Each applicant for a license or permit under this article or any other person who has a financial interest in the business or corporation making the application shall submit to fingerprint registration *as part of the background investigation conducted pursuant to § 5–108.*" (Emphasis added.) Section 5–104(N) makes clear that the parameters of a background investigation extend as far as A.R.S. § 5–108 permits.

 ¶ 14 Pursuant to A.R.S. § 5–108(A), ADOR is required to conduct a "thorough investigation" of the applicant for a license or permit. The reach of such an investigation is potentially very broad, encompassing areas such as an examination of an applicant's criminal background, moral character, certain financial transactions, and whether it is in the best interest of the people of Arizona to grant an applicant a license or permit. *See* A.R.S. § 5–108(A)(1)(b), (e), (f), (h), (i). Because the statute expressly authorizes "thorough" inquiry into the applicant's commercial background in addition to its criminal background, we conclude that the trial court did not err in ruling that § 5–108 and its related statutes authorized ADOR to conduct the investigation in the manner it employed in this case. And because A.R.S. § 5–107.01(E) provides that the "applicant shall pay the fingerprint fee and costs of the background investigation in an amount that is determined by the department," we conclude that ADOR had lawful authority to charge Turf Paradise the purported actual costs of that investigation.[5]

**II. Attorneys' Fees on Appeal**

¶ 15 Turf Paradise requests attorneys' fees on appeal. Because Turf Paradise cites no basis for its request and because it is not the successful party in this appeal, we deny the request.

**CONCLUSION**

¶ 16 For the reasons stated above, we affirm the trial court's grant of ADOR's motion to dismiss.

CONCURRING: LAWRENCE F. WINTHROP, and MICHAEL J. BROWN, Judges.

---

5. At oral argument, Turf Paradise argued for the first time that because the 2002 amendment to A.R.S. § 5–107.01 was entitled "fingerprinting," it would be error to construe the amendment as one that expands ADOR's authority to recover costs to conduct non-criminal investigations because this would violate art. IV, pt. 2, § 13 of the Arizona Constitution, which requires the subject of a bill to be "expressed in the title" and provides that any portion of the act not expressed in the title is void. But the " 'title to an act need not be a complete index to its contents,' and a provision need only 'directly or indirectly relate [ ] to the subject of the title and hav[e] a natural connection therewith' or be 'germane to the subject expressed in the title' to be constitutional." *Manic v. Dawes*, 213 Ariz. 252, 256, ¶ 21, 141 P.3d 732, 736 (App.2006) (alterations in original) (quoting *State v. Harold*, 74 Ariz. 210, 214–15, 246 P.2d 178, 180 (1952)).