254 P.3d 404

**NORTH PEAK CONSTRUCTION, LLC, an Arizona limited liability company, Plaintiff/Appellant,**

**v.**

**ARCHITECTURE PLUS, LTD, an Arizona corporation; and Mark Wayne Fredstrom and Jane Doe Fredstrom, husband and wife, Defendants/Appellees.**

**No. 1 CA–CV 10–0017.**

Court of Appeals of Arizona, Division 1, Department B.

April 26, 2011.

Jennings, Haug & Cunningham, LLP By D. Kim Lough, Hillary P. Gagnon, Attorneys for Plaintiff/Appellant.

Carmichael & Powell, P.C. By Sid A. Horwitz, Attorneys for Defendants/Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 Plaintiff North Peak Construction, LLC ("North Peak") filed a complaint in superior court against Defendants Architecture Plus, Ltd. and Mark and Audrey Fredstrom (collectively "Architect"), asserting claims for breach of implied warranty and negligence. North Peak appeals the court's grant of Architect's motion to dismiss the breach of implied warranty claim. Because we conclude that North Peak stated a valid claim for relief against Architect for breach of implied warranty, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing the dismissal of a claim under Arizona Rule of Civil Procedure 12(b)(6), we accept well-pled factual allegations in the complaint as true and resolve any conflicting inferences in favor of the non-moving party. *S.W. Paint & Varnish Co. v. Ariz. Dep't of Envtl. Quality*, 191 Ariz. 40, 41, 951 P.2d 1232, 1233 (App.1997), *aff'd in part,* 194 Ariz. 22, 976 P.2d 872 (1999).

¶ 3 North Peak, a limited liability company, is a licensed residential contractor. Vern Haugen is the principal and managing member of North Peak. Architecture Plus is an architectural firm, licensed in Arizona. Mark Fredstrom is the principal architect at Architecture Plus.

¶ 4 According to the complaint, Haugen owned a hillside lot in Scottsdale that has an extraordinary view of the city. The view, however, is limited because of the lot's irregular shape. Haugen planned to build a home that would take advantage of the lot's city view. Haugen entered into a contract with Architect for the design of a custom home to be built on the lot. The contract required Architect to consider the requirements of the owner in designing the home. Haugen provided Architect with a topological map, marking the corridor within which Architect was to design and align the house. Haugen wanted to build the home within this "limited view corridor" in order to maximize the view of the city. Haugen discussed with Fredstrom the importance of properly orienting the home on the lot to maximize the view. Haugen planned to have North Peak build the house according to Architect's design.

¶ 5 Haugen then sold the lot and Architect's preliminary plans to Russell Scaramella. Scaramella entered into a separate contract with Architect "for further design and alterations to the [home]." The contract between Scaramella and Architect contained the same written terms as the contract between Haugen and Architect. The final construction plans for the home were signed and sealed by Fredstrom.

¶ 6 Scaramella contracted with North Peak to build the home. At some point in 2006 after North Peak began construction, it discovered that Architect's plans aligned the home so that it faced a water tank and mountain rather than the city lights. As a result, North Peak alleges that it demolished the construction work it had already performed and rebuilt the home, costing approximately $164,803.17 in additional expenses.

¶ 7 In January 2009, North Peak filed a complaint against Architect in superior court, asserting a claim for breach of implied warranty and a claim for negligence. In its allegation that Architect breached an implied warranty, North Peak claimed it had relied upon Architect's "design plans and their implied representation that such plans were prepared with the reasonable skill, care, and diligence of a competent design professional, in a non-negligent manner, and in conformance with the project specifications as provided by Mr. Haugen and Mr. Scaramella." North Peak alleged Architect had "breached the implied warranty by providing deficient and substandard workmanship in designing and orienting the custom home on the [l]ot without maximizing the views of the city lights as expressly required." North Peak requested attorneys' fees based on Arizona Revised Statutes ("A.R.S.") section 12–341.01(A) (2003), claiming its implied warranty claim arose out of contract. North Peak's negligence claim alleged Architect fell below the standard of care when it "failed to orient the custom residence so to properly provide the views of the city lights."

¶ 8 Architect filed a motion to dismiss the breach of implied warranty claim. Relying on *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987), Architect argued that "the essence of [North Peak's] claim is one for negligence" and that "there is no contractually-based claim for breach of implied warranty insofar as design professionals are concerned." According to Architect, North Peak asserted the implied warranty claim in an "attempt to convert an action for which attorneys' fees are not recoverable into one in which attorneys' fee[s] are recoverable."

¶ 9 At oral argument on the motion, Architect referred to North Peak's breach of implied warranty claim as a claim for attorneys' fees and phrased the issue before the court as "whether Plaintiff has pleaded a claim for attorneys' fees." Architect argued that asserting the breach of implied warranty claim was "no different than reasserting the claim for negligence" because the warranty Architect was alleged to have breached was "noth-

ing more than the warranty to act in a non-negligent manner."

¶ 10 The court agreed that the implied warranty claim was essentially a claim for attorneys' fees. Relying on language from *Barmat* and this court's now-vacated decision in *Flagstaff Affordable Hous. Ltd., P'ship v. Design Alliance, Inc.*, 221 Ariz. 433, 212 P.3d 125 (App.2009), *vacated by* 223 Ariz. 320, 223 P.3d 664 (2010), the trial court concluded that North Peak's complaint alleged "professional negligence" and such allegations "sound in tort, rather than contract." As a result, the court dismissed the implied warranty claim.

¶ 11 Architect then filed a motion for summary judgment on the remaining negligence claim, arguing it was barred by the statute of limitations. The court granted the motion and entered a signed order dismissing North Peak's complaint in its entirety.

¶ 12 North Peak timely appeals. We have jurisdiction in accordance with A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 13 On appeal, North Peak does not challenge the propriety of the dismissal of the negligence claim. Accordingly, the fundamental issue on appeal is whether the court erred in dismissing North Peak's claim for breach of implied warranty for failure to state a claim upon which relief can be granted. We review de novo a trial court's grant of a motion to dismiss for failure to state a claim. *Phelps Dodge Corp. v. El Paso Corp.*, 213 Ariz. 400, 402, ¶ 8, 142 P.3d 708, 710 (App.2006). We will uphold the dismissal only if North Peak "could not be entitled to relief under any facts susceptible of proof under the claims stated." *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984), *overruled on other grounds by Gipson v. Kasey*, 214 Ariz. 141, 144, ¶¶ 14–17, 150 P.3d 228, 231 (2007).[1]

### Breach of Implied Warranty Recognized in *Donnelly*

¶ 14 The trial court agreed with Architect that "there is no contractually-based

---

1. The portions of *Donnelly* we rely upon in this   opinion remain good law.

claim for breach of implied warranty insofar as design professionals are concerned." In *Donnelly*, however, the supreme court held that a claim for breach of an implied warranty may be brought against a design professional even in the absence of privity. 139 Ariz. at 188–89, 677 P.2d at 1296–97.

¶ 15 *Donnelly* arose out of a bid the Coconino County Board of Supervisors solicited for improvements to a school. 139 Ariz. at 185, 677 P.2d at 1293. One of the documents available to the bidders was a site plan that included engineering specifications prepared by Oberg/Hunt/Gilleland ("OHG"), an architectural firm. *Id.* In preparing its bid, Donnelly Construction Company relied on the site plan and the associated specifications. *Id.* The board of supervisors eventually accepted Donnelly's bid. *Id.* However, after beginning construction, Donnelly discovered that the plans and specifications OHG had prepared were incorrect. *Id.* at 185–86, 677 P.2d at 1293–94. The faulty plans resulted in increased construction costs to Donnelly. *Id.* at 186, 677 P.2d at 1294. Donnelly sued the school district and OHG for the increased costs, asserting claims of negligent misrepresentation, negligence, and breach of the implied warranty that OHG's plans were accurate. *Id.* OHG filed a Rule 12(b)(6) motion to dismiss, asserting (among other arguments) lack of privity between Donnelly and OHG. *Id.* The trial court granted the motion, and OHG ultimately petitioned the Arizona Supreme Court for review following a reversal by the Court of Appeals. *Id.*

¶ 16 In ruling that the trial court erred in granting the motion to dismiss, our supreme court held that a contractor need not be in privity with an architect to sue the architect for negligence and breach of implied warranty. *Id.* at 188–89, 677 P.2d at 1296–97. The court recognized that the implied warranty given by design professionals is "that they have exercised their skills with care and diligence and in a reasonable, non-negligent manner." *Id.* at 189, 677 P.2d at 1297. Accordingly, the court held that Donnelly was able to go forward with its breach of implied warranty claim and its negligence claim.

¶ 17 The facts before us are analogous to *Donnelly*. North Peak, alleging it relied to its detriment on Architect's faulty design plans, brought claims for negligence and breach of implied warranty against Architect. No privity of contract exists between North Peak and Architect. Because *Donnelly* recognizes that breach of an implied warranty is a valid cause of action against a design professional and can be brought in addition to a claim for negligence, we must conclude that the court erred in dismissing North Peak's implied warranty claim.

¶ 18 Architect acknowledges that "a contractor possesses a claim for breach of implied warranty against a design professional." Relying on *Barmat,* however, Architect argues that absent a specific contractual obligation, the professional's duties are "implied-in-law or pure legal duties, the breach of which solely give rise to claims for negligence." According to Architect, because the design contracts did not include a specific contractual obligation requiring that the plans ensure a specific view, the trial court properly dismissed the implied warranty claim because it was identical to the negligence claim.

¶ 19 We disagree with Architect's reliance on *Barmat* to answer the question whether a contractor such as North Peak is entitled to pursue a breach of implied warranty claim. The issue in *Barmat* was whether a legal malpractice action "arises out of contract" in order to be eligible for an award of attorneys' fees pursuant to A.R.S. § 12–341.01(A). 155 Ariz. at 520, 747 P.2d at 1219. The *Barmat* court held that § 12–341.01(A) is inapplicable in cases where the cause of action does not depend on the existence of a contract. *Id.* at 523, 747 P.2d at 1222. The court did not specifically address breach of implied warranty claims or whether such a claim may be asserted simultaneously with a negligence claim.

¶ 20 Although we base our decision on *Donnelly*, we are also mindful that our supreme court has held that a claim for breach of an implied warranty of habitability and workmanlike performance sounds in contract rather than tort. *Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.*, 218 Ariz. 574, 575, ¶ 5, 190 P.3d 733, 734 (2008); *Woodward v. Chirco Constr. Co.*,

*Inc.,* 141 Ariz. 514, 515–16, 687 P.2d 1269, 1270–71 (1984) (rejecting argument that because implied warranty of habitability and workmanlike performance "is imposed by law," it does not arise out of contract). The implied warranty described in *Donnelly* is that an architect has exercised his or her skills with care and diligence and in a reasonable, nonnegligent manner. Although that implied warranty may differ from the implied warranty of habitability and workmanlike performance addressed in *Lofts* and *Woodward,* there are substantial similarities between them. For that reason, we consider it very likely—especially in light of *Donnelly*'s endorsement of a contractor's right to bring simultaneous negligence and implied warranty claims—that the implied warranty at issue in this case also sounds in contract.

¶ 21 Additionally, we disagree with Architect's argument that North Peak cannot assert a cause of action for breach of implied warranty because the design contracts did not expressly require the home to be designed to ensure a specific view. North Peak did not assert a claim for ordinary breach of contract or for breach of an express warranty. Rather, the complaint alleges that by providing design plans that did not properly align the house, Architect breached an implied warranty that it had exercised its skill with care and diligence and in a reasonable, non-negligent manner. In addition, nothing in *Donnelly* suggests that implied warranty is dependent on the design professional breaching any specific contractual provision.

¶ 22 Accepting the allegations in North Peak's complaint as true, we conclude that North Peak properly pleaded a claim for breach of implied warranty against Architect.

### Breach of Implied Warranty Claim Against Mark Fredstrom Personally

¶ 23 Architect also argues that the judgment in favor of Defendants Mark Fredstrom and his wife should be affirmed for the separate reason that Mark Fredstrom signed the contract with Scaramella in his capacity as president of Architecture Plus, Ltd. and not in his personal capacity. We disagree because North Peak's implied

warranty is not based on Scaramella's contract with Architecture Plus, Ltd. Rather, the implied warranty is based on (1) North Peak's alleged reliance on the architectural plans and specifications, (2) *Donnelly*'s recognition that "design professionals" warrant "that they have exercised their skills with care and diligence and in a reasonable, nonnegligent manner," 139 Ariz. at 189, 677 P.2d at 1297, and (3) the alleged signing and sealing by Fredstrom of the plans and specifications. *See* A.R.S. § 32–125(E) (2008) (providing that a registered architect is "responsible for all documents that the registrant signs, stamps or seals").

¶ 24 Finally, Architect asserts that the trial court's October 2009 summary judgment ruling dismissed the negligence claim *and* the breach of implied warranty claim on the basis of the two-year statute of limitations, A.R.S. § 12–542 (2003), and that we should uphold the summary judgment ruling because North Peak did not challenge the statute of limitations ruling in its opening brief. North Peak argues, however, that the court's summary judgment ruling on the negligence claim came *after* it had already dismissed the breach of implied warranty claim and, therefore, did not apply to that dismissed claim. Notwithstanding some ambiguity in the record on this point, we believe the most appropriate interpretation of the record supports the conclusion that the implied warranty claim, having already been dismissed, was not further adjudicated in the trial court's statute of limitations ruling regarding the negligence claim. And because the issue has not been fully briefed on appeal, we decline to decide which statute of limitations is applicable to North Peak's breach of implied warranty claim.

### Attorneys' Fees

¶ 25 Both parties have requested an award of attorneys' fees on appeal under A.R.S. § 12–341.01(A), which provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Architect is not the successful party on appeal and is not entitled to an award of fees under § 12–341.01(A). North

Peak has prevailed on appeal and could be considered for an award of fees if § 12–341.01(A) is applicable to North Peak's implied warranty claim. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 392–94, 710 P.2d 1025, 1047–49 (1985) (explaining that a party who prevails on an interim appeal may be considered a "successful party" eligible for award of fees under § 12–341.01(A)) (*superseded by statute on other grounds*).

¶ 26 There is no express contract between North Peak and Architect; North Peak's claim against Architect is based on an implied warranty. Regarding implied contracts, our supreme court in *Barmat* determined that § 12–341.01(A) applies only to claims arising out of implied-in-fact contracts, not implied-in-law contracts. 155 Ariz. at 521–24, 747 P.2d at 1220–23. Generally, for the purpose of determining the applicability of § 12–341.01(A), claims against professionals do not arise from contract but rather are imposed by law. *Id.* at 524, 747 P.2d at 1223. The implied warranty recognized in *Donnelly* is created—implied—by law, and therefore § 12–341.01(A) does not apply to North Peak's implied warranty claim. *See id.; see also Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 16, ¶ 31, 6 P.3d 315, 321 (App.2000) (stating that "[t]he duty of performing in a 'workmanlike' manner is a duty implied by law"). That North Peak's implied warranty claim likely sounds in contract, *see supra* ¶ 20, does not compel the conclusion that it "arises out of contract" within the meaning of § 12–341.01(A).

## CONCLUSION

¶ 27 For the foregoing reasons, we reverse the dismissal of the breach of implied warranty claim and remand for further proceedings consistent with this decision. North Peak is entitled to an award of its taxable costs on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and MICHAEL J. BROWN, Judge.