290 P.3d 446

John F. SULLIVAN and Susan B. Sullivan, Plaintiffs/Appellants,

v.

PULTE HOME CORPORATION, Defendant/Appellee.

No. 1 CA–CV 10–0754.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 4, 2012.

John F. Sullivan, Phoenix, In Propria Persona and Attorney for Susan B. Sullivan.

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Stephen E. Richman, Anne L. Tiffen, Denise H. Troy, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 Plaintiffs John F. Sullivan and Susan B. Sullivan ("the Sullivans") sued Pulte Home Corporation for economic damages arising from a home built and sold by Pulte. The Sullivans asserted several claims, including breach of implied warranty, various negligence claims, consumer fraud, and fraudulent concealment. Pulte filed a motion to dismiss pursuant to Arizona Rule of Civil Procedure 12(b)(6). The court granted the motion and dismissed the action for failure to state claims upon which relief could be granted. The Sullivans appeal. We affirm in part, reverse in part, and remand for further proceedings as outlined below.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing the dismissal of a claim under Rule 12(b)(6), we accept well-pled factual allegations in the complaint as true and resolve any conflicting inferences in favor of the non-moving party. *Cullen v. Auto–Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008) (citations omitted).

¶ 3 Pulte built homes and created a hillside community in 2000. It sold the home at issue to the original purchaser in 2000. In 2003, the Sullivans purchased the home from the original purchaser. At no time was there any contract or direct contact between Pulte and the Sullivans.

¶ 4 The Sullivans' home was built with a retaining wall because of the hillside nature of the lot. In March 2009, the Sullivans discovered problems with the retaining wall and construction of the home site. They contacted Pulte. Pulte said it was no longer responsible for such potential deficiencies. The Sullivans employed engineers to investigate the issues with the retaining wall. The engineers concluded that the construction of the wall and grading of the lot did not meet proper building standards.

¶ 5 The Sullivans filed their complaint in February 2010. Pulte removed the case to federal district court and filed a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6). The Sullivans filed a response to the motion to dismiss and moved to remand the case to state court. The district court remanded the case to superior court without deciding Pulte's Rule 12(b)(6) motion. Upon remand, Pulte filed with superior court the Rule 12(b)(6) filings made in federal court and requested dismissal, and the court granted the motion to dismiss. The court also awarded Pulte attorneys' fees in the amount of $5000, relying on Arizona Revised Statutes ("A.R.S.") section 12–341.01(A) (2003), on the basis that the implied warranty claim arose out of contract.

¶ 6 The Sullivans timely appeal. We have jurisdiction in accordance with A.R.S. §§ 12–120.21(A) (2003) and 12–2101(B) (2003).

## ANALYSIS

¶ 7 "We review de novo a trial court's grant of a motion to dismiss for failure to state a claim." *N. Peak Constr., L.L.C. v. Architecture Plus, Ltd.*, 227 Ariz. 165, 167, ¶ 13, 254 P.3d 404, 406 (App.2011)

(citing *Phelps Dodge Corp. v. El Paso Corp.*, 213 Ariz. 400, 402, ¶ 8, 142 P.3d 708, 710 (App.2006)). We will affirm if the Sullivans "would not be entitled to relief under any facts susceptible of proof in the statement of the claim." *T.P. Racing, L.L.L.P. v. Ariz. Dep't of Racing,* 223 Ariz. 257, 259, ¶ 8, 222 P.3d 280, 282 (App.2009).

## DUE PROCESS AND EQUAL PROTECTION CLAIMS

■ ¶ 8 The Sullivans initially contend that they were treated unfairly, denied due process, and denied equal protection of the law when the superior court relied on the motion papers filed in federal court and ruled on Pulte's motion to dismiss before receiving the Sullivans' response in superior court. But the Sullivans had already filed a response opposing Pulte's motion in federal court. After the remand to superior court, Pulte filed its motion to dismiss and the Sullivans' response. When the superior court granted Pulte's motion to dismiss, the court specifically stated that it had received and considered the Sullivans' response (originally filed in federal court).

¶ 9 There is no unfair treatment or constitutional violation here. The court considered the Sullivans' response originally filed in federal court. *See Ayres v. Wiswall,* 112 U.S. 187, 190–91, 5 S.Ct. 90, 28 L.Ed. 693 (1884) ("[I]t will be for the State court, when the case gets back there, to determine what shall be done with pleadings filed ... during the pendency of the suit in the other jurisdiction."); *State ex rel. Village of Los Ranchos de Albuquerque v. City of Albuquerque,* 119 N.M. 169, 889 P.2d 204, 207 (App.1993) (recognizing that "pleadings filed in federal court, while the federal court has jurisdiction, become part of the state court record on remand"). We are not dealing with a situation in which a motion was granted without the opposing party having had an opportuni-

ty to respond and oppose the motion. Additionally, the Sullivans' response filed in state court one day after the court granted the motion to dismiss was not substantially different from the original response they filed in federal court, which the superior court considered before ruling. Moreover, the Sullivans did not file a motion for new trial or motion for reconsideration, which would have allowed the trial court to consider their complaint of unfair treatment in a timely fashion.

¶ 10 The Sullivans received notice of the motion to dismiss and an opportunity to be heard by filing a response-the essentials of due process. And they did in fact oppose the motion in a substantive response. The record reveals no violation of due process or equal protection.

## BREACH OF IMPLIED WARRANTY CLAIMS

¶ 11 The Sullivans argue that Pulte breached the implied warranties of good workmanship and habitability by virtue of the latent defects in the retaining wall and home site preparation.[1] Pulte counters that even if a latent defect was present, the Sullivans are barred from asserting a breach of implied warranty claim by the construction statute of repose, A.R.S. § 12–552 (2003). The Sullivans respond with three alternative arguments: A.R.S. § 12–552 is not applicable to their implied warranty claim; if applicable, § 12–552 is unconstitutional as applied; and the statutory period should be tolled.

### The Statute of Repose Applies to Implied Warranty Claims

¶ 12 "Section 12–552 is a statute of repose that limits the time within which parties may bring breach of contract and implied warranty actions against developers, builders, and certain others." *Maycock v. Asilomar Dev., Inc.,* 207 Ariz. 495, 498, ¶ 15, 88 P.3d 565, 568

---

1. Our supreme court has not yet decided whether Arizona law recognizes "a single implied warranty of workmanship and habitability, as opposed to two separate warranties." *Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.,* 218 Ariz. 574, 576 n. 2, ¶ 11, 190 P.3d 733, 735 n. 2 (2008) (citing *Nastri v. Wood Bros. Homes, Inc.,* 142 Ariz. 439, 444, 690 P.2d

158, 163 (App.1984) as "holding that the Arizona decisions establish one implied warranty"). We need not decide in this opinion whether these are separate implied warranties or one. For ease of reference, we will similarly refer in this opinion to a single implied warranty of workmanship and habitability.

(App.2004). The Sullivans allege a breach of the implied warranty of workmanship and habitability, which is specifically governed by subsection (C) of the statute of repose.

¶ 13 The statute of repose provides:

A. Notwithstanding any other statute, no action or arbitration based in contract may be instituted or maintained against a person who develops or develops and sells real property, or performs or furnishes the design, specifications, surveying, planning, supervision, testing, construction or observation of construction of an improvement to real property more than eight years after substantial completion of the improvement to real property.

B. Notwithstanding subsection A of this section, in the case of injury to real property or an improvement to real property, if the injury occurred during the eighth year after the substantial completion, or, in the case of a latent defect, was not discovered until the eighth year after substantial completion, an action to recover damages for injury to the real property may be brought within one year after the date on which the injury to real property or an improvement to real property occurred or a latent defect was discovered, but in no event may an action be brought more than nine years after the substantial completion of the improvement.

C. *The limitations in subsections A and B of this section include any action based on implied warranty arising out of the contract or the construction, including implied warranties of habitability, fitness or workmanship.*

A.R.S. § 12–552 (emphasis added).

 ¶ 14 Pulte substantially completed the home in 2000. In March 2009, the Sullivans alerted Pulte to problems with the retaining wall. The Sullivans filed this action on February 25, 2010. The Sullivans' action was filed well beyond the eight-year limitation created by the statute of repose. Even if we assume Pulte completed the home as late as the last day of 2000, the eight-year period then ended on December 31, 2008. Additionally, the exception provided in A.R.S. § 12–552(B)—that discovery of a latent defect in the eighth year will provide additional time

to file—does not help the Sullivans. Section 12–552(B) plainly states that "in no event may an action be brought *more than nine years after* the substantial completion of the improvement." (Emphasis added.) The Sullivans filed their claim in February 2010, more than nine years after Pulte completed the home. Therefore, the statute of repose bars their suit based on alleged breach of the implied warranty of workmanship and habitability, unless the statute is unconstitutional as applied or the statutory period is equitably tolled.

### A.R.S. § 12–552 is Constitutional

 ¶ 15 The Sullivans argue that A.R.S. § 12–552 is unconstitutional as applied. The provision of the Arizona Constitution relied upon by the Sullivans, however, applies to tort claims, not contract claims.

¶ 16 Article 18, Section 6, of the Arizona Constitution, provides that "the right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." This court has held, after in-depth constitutional and statutory analysis, that the "anti-abrogation clause does not extend to common law contract claims." *Samaritan Health Sys. v. Superior Court*, 194 Ariz. 284, 290–94, ¶¶ 21–44, 981 P.2d 584, 590–94 (App.1998). Moreover, "the purpose of the anti-abrogation clause was to curtail the legislature's power to limit the amount of recoverable tort damages and to ensure that tort claimants have open access to the courts." *Id.* at 292–93, ¶ 37, 981 P.2d at 592–93.

¶ 17 Recognizing that Article 18, Section 6 applies to tort claims but not to contract claims, the question arises whether a breach of implied warranty claim is a tort claim (subject to the constitutional protection of Article 18, Section 6) or a contract claim (not subject to such protection). Our supreme court has answered that question by describing the implied warranty of habitability and workmanlike performance as a "contract claim" notwithstanding the absence of privity. *See Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320,

325–26, ¶ 27, 223 P.3d 664, 669–70 (2010) ("Arizona law allows home purchasers to bring contract claims for breach of the implied warranty of good workmanship and habitability even if they are not in privity with the builder."). The supreme court has also explained that a claim for breach of the implied warranty "sounds in contract" rather than tort. *Lofts at Fillmore*, 218 Ariz. at 575, ¶ 5, 190 P.3d at 734 (citing *Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 516, 687 P.2d 1269, 1271 (1984)). Additionally, the court in *Woodward* rejected an argument that the implied warranty does not arise out of contract because it is "imposed by law." 141 Ariz. at 515–16, 687 P.2d at 1270–71.

¶ 18 Because a claim for breach of the implied warranty of workmanship is contractual in nature and because Article 18, Section 6, of the Arizona Constitution applies to tort claims rather than contract claims, there is no constitutional impediment in applying A.R.S. § 12–552 to the Sullivans' implied warranty claim.

### Equitable Tolling Does Not Apply to the Statute of Repose

¶ 19 The Sullivans further argue that even if the statute of repose is applicable to the implied warranty claim, the time within which to file the action did not expire because it was tolled by virtue of the doctrine of equitable tolling. We disagree.

¶ 20 A statute of repose "defines a substantive right." *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127, ¶ 24, 254 P.3d 360, 366 (2011) (citing *Hosogai v. Kadota*, 145 Ariz. 227, 231, 700 P.2d 1327, 1331 (1985)). In *Albano*, our supreme court decided that the period of repose in A.R.S. § 12–552 would not be tolled for a class action because it would be improper to "employ a court-adopted rule of procedure to alter the substantive effect of a statute of repose." 227 Ariz. at 127, ¶ 26, 254 P.3d at 366. The court found that tolling was not consistent with the legislative scheme of the statute. *Id.* at 126–27, ¶¶ 22–23, 254 P.3d at 365–66.

¶ 21 The legislative intent of § 12–552 is clear: to provide an outer limit—a cut-off date—beyond which no actions may be brought for breach of contract and implied warranty. *See id.* at 127, ¶¶ 23–28, 254 P.3d at 366; *see also Lofts at Fillmore*, 218 Ariz. at 578 n. 4, ¶ 18, 190 P.3d at 737 n. 4 (§ 12–552 imposes eight-year statute of limitations "regardless of whether defective construction is discovered during that period"); *Maycock*, 207 Ariz. at 501, ¶ 28, 88 P.3d at 571 (explaining that the statute of repose "sets a period of time within which claims must be brought regardless of when the cause of action may accrue" and recognizing "a claim may be barred if it does not accrue within the allowable statutory period").

¶ 22 The Arizona Supreme Court's analysis in *Albano* applies to this case: "[t]olling the statute here to permit such a result is simply not 'consonant with the legislative scheme' of § 12–552." 227 Ariz. at 127, ¶ 28, 254 P.3d at 366. Just as in *Albano*, to apply equitable tolling here would allow a judge-made doctrine to trump the statutory language reflecting the clear intent of the legislature. We therefore conclude the doctrine of equitable tolling is not applicable to the construction statute of repose.

¶ 23 For these reasons, the trial court correctly ruled that the Sullivans' implied warranty claim was barred by A.R.S. § 12–552.

### ECONOMIC LOSS DOCTRINE

¶ 24 Pulte contends that the Sullivans' tort claims are barred by the economic loss doctrine ("ELD") because the Sullivans had an available contractual remedy in the form of a breach of implied warranty claim. The Sullivans contend that because they were not in privity with Pulte and never had a contract with Pulte, the ELD is not applicable and their tort claims should be allowed to proceed. The trial court agreed with Pulte that the ELD applied and dismissed all of the Sullivans' tort claims on that basis. We reach the opposite conclusion.

¶ 25 Both parties rely on *Flagstaff Affordable* to support their positions. Like *Flagstaff Affordable*, this is a construction defect case; and like the plaintiff in *Flagstaff Affordable*, the Sullivans seek only economic losses. The Arizona Supreme Court described the economic loss doctrine issues as:

"(1) whether *a contracting party* should be limited to its contract remedies for purely economic losses; and (2) whether a plaintiff may assert tort claims for economic damages against a defendant *absent any contract* between the parties." *Flagstaff Affordable,* 223 Ariz. at 323, ¶ 12, 223 P.3d at 667 (emphasis added). The supreme court explained that "the economic loss doctrine is best directed to the first of these issues, and we use the phrase to refer to a common law rule limiting *a contracting party* to contractual remedies for the recovery of economic losses." *Id.* (emphasis added). Under this analysis, the ELD does not apply to bar tort claims for purely economic losses when there is no contract between the parties.

¶ 26 The supreme court relied on underlying policy considerations within tort and contract law in determining whether the ELD is applicable. *Id.* at 325, ¶ 24, 223 P.3d at 669. The court noted that the "contract law policy of upholding the expectations of the parties has as much, if not greater, force in construction defect cases." *Id.* at ¶ 25. The court emphasized that "construction-related contracts often are negotiated between the parties on a project-specific basis and have detailed provisions allocating risks of loss and specifying remedies. In this context, allowing tort claims poses a greater danger of undermining the policy concerns of contract law." *Id.*

¶ 27 The supreme court also explained the function of the ELD as follows:

The principal function of the economic loss doctrine, in our view, is to *encourage private ordering of economic relationships and to uphold the expectations of the parties* by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain. These concerns are *not implicated when the plaintiff lacks privity and cannot pursue contractual remedies.*

*Id.* at 327, ¶ 38, 223 P.3d at 671 (emphasis added).

¶ 28 Pulte contends, however, that the Sullivans had a contractual remedy because they possessed a potential breach of implied warranty claim. As Pulte correctly points out, the implied warranty claim sounds in contract. *See Lofts at Fillmore,* 218 Ariz. at 575, ¶ 5, 190 P.3d at 734. Additionally, Pulte cites the following language from *Flagstaff Affordable:*

[A]lthough a homeowner's purchase of a mass-produced home might in some ways be analogous to a consumer's purchase of a product, even in this situation there is less reason to preserve tort remedies for purely economic loss. *Arizona law allows home purchasers to bring contract claims for breach of the implied warranty of good workmanship and habitability even if they are not in privity with the builder.*

223 Ariz. at 325–26, ¶ 27, 223 P.3d at 669–70 (emphasis added) (citing *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 245, 678 P.2d 427, 430 (1984)). This language from *Flagstaff Affordable* is part of the supreme court's explanation why the ELD applies to construction defect claims in addition to product claims. We do not think the supreme court, by using this language, was intending to adjudicate the issue now presented in this appeal: whether an implied warranty claim, created by law in the absence of privity between the parties, will suffice to compel application of the ELD to eliminate otherwise viable tort claims.

¶ 29 Our conclusion is further supported by the paragraph immediately following the above-quoted language, in which the supreme court concludes that the ELD is applicable to bar tort claims by "contracting parties" seeking purely economic losses from construction defects:

Given these considerations, we conclude that in construction defect cases, "the policies of the law generally will be best served by leaving the parties to their commercial remedies" when a *contracting party* has incurred only "economic loss, in the form of repair costs, diminished value, or lost profits." We accordingly apply the economic loss doctrine and hold that a *contracting party* is limited to its contractual remedies for purely economic loss from construction defects.

*Flagstaff Affordable,* 223 Ariz. at 326, ¶ 28, 223 P.3d at 670 (citation omitted) (emphasis added).

¶ 30 Based on *Flagstaff Affordable*, we conclude that the ELD is not applicable in the instant case because the Sullivans and Pulte were not contracting parties and the Sullivans had no opportunity to negotiate with Pulte to allocate the risk of future losses or attempt to protect themselves in the event latent defects in the construction were discovered. We also rely on the supreme court's emphasis in *Flagstaff Affordable* that contracting parties are protected under contract law for the benefit of their bargains. *Id.* at 327, ¶ 38, 223 P.3d at 671. We are persuaded that parties like the Sullivans, who were not in privity with the builder, do not lose their tort claims merely because they have (or had) an implied warranty claim.[2]

¶ 31 Because the Sullivans had no contract with Pulte, the ELD is not applicable here and will not bar any viable tort claims the Sullivans may possess. The trial court erred in dismissing the Sullivans' tort claims on the basis of the ELD.

## CONSUMER FRAUD CLAIMS

¶ 32 Our supreme court has recognized an implied private cause of action under the Consumer Fraud Act ("CFA"). *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974). The Sullivans allege that Pulte violated the CFA, A.R.S. §§ 44–1521 to 44–1534 (2003 & Supp. 2011), by concealing the improperly built retaining wall and improperly graded home site. The key provision is § 44–1522(A) (Supp. 2011):

> The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that *others* rely upon such concealment, suppression or omission, *in connection with the sale or advertisement of any merchandise* whether or not any person has in fact been misled, deceived, or damaged thereby, is declared an unlawful practice.

(Emphasis added.)

¶ 33 The Sullivans rely on the word "others" within § 44–1522(A), arguing that the statute does not require a direct communication by Pulte to them; rather, the statute requires only that Pulte have intended that "others" rely upon Pulte's concealment or omission. The Sullivans allege they relied on Pulte's reputation as a builder and on marketing statements on Pulte's website touting the quality of Pulte homes.

¶ 34 Pulte contends that the CFA does not protect subsequent purchasers and that Pulte cannot be liable under the CFA because it had no interaction with the Sullivans until 2009. Pulte further argues that the CFA requires the Sullivans to demonstrate how Pulte's conduct was "directed at" them. The trial court dismissed the consumer fraud and fraudulent concealment claims on the basis that no representations were made by Pulte to the Sullivans.

¶ 35 To succeed on a CFA claim, "a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 208 Ariz. 124, 129, ¶ 16, 91 P.3d 346, 351 (App. 2004). We conclude that the Sullivans, as subsequent purchasers, have not alleged facts supporting a viable CFA claim against Pulte.

¶ 36 Section 44–1522(A) requires that the alleged misrepresentations or deceptive acts be made "in connection with the sale or advertisement" of the home. The Sullivans bought the home from the original purchaser, not from Pulte. There was no "sale" or transaction between Pulte and the Sullivans. Nor was there any contact between Pulte and the Sullivans until many years after the Sullivans purchased the home.

---

**2.** We realize that this application of *Flagstaff Affordable* may create a seeming anomaly: a home buyer in privity with the home builder/vendor, seeking recovery for purely economic losses resulting from construction defects, may have fewer legal theories to assert than a subsequent purchaser who is not in privity with the builder/vendor. Nonetheless, our task is to properly apply *Flagstaff Affordable* to these facts.

¶ 37 We have considered whether the word "advertisement" in § 44–1522(A) might stand alone in the statutory clause "in connection with the sale or advertisement," untethered to the requirement of a sale or transaction between Pulte and the Sullivans. But we conclude, on the basis of the statutory language, the purpose of the implied private cause of action under the CFA, and the alleged facts of this case that a false or deceptive "advertisement" must have been related to a sale between the parties. The Sullivans cannot make this showing here.

¶ 38 Arizona courts have not extended the private cause of action under the CFA to subsequent purchasers and we decline to do so here.[3] Our conclusion is consistent with the CFA's intended function. "The purpose of the [CFA] is to provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *Waste Mfg. & Leasing Corp. v. Hambicki*, 183 Ariz. 84, 88, 900 P.2d 1220, 1224 (App. 1995) (citations omitted); *see also Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 344, 666 P.2d 83, 89 (App.1983) (similarly recognizing CFA's purpose to protect against "disproportionate bargaining power"). Because a subsequent purchaser is not a party to the original transaction and therefore would not encounter this "disproportionate bargaining power," such a purchaser is not within the class of consumers intended to be protected by the implied private cause of action under the CFA.

¶ 39 In sum, the Sullivans as subsequent purchasers were not placed in an unfair bargaining position vis-a-vis Pulte because they had no transaction with Pulte. No misrepresentations or statements were made by Pulte to the Sullivans "in connection with the sale or advertisement" of the home. The implied private cause of action under the CFA is not available to the Sullivans on this record. Ac-

cordingly, the trial court did not err in dismissing the Sullivans' CFA claims.

## FRAUDULENT CONCEALMENT CLAIMS

¶ 40 The Sullivans also alleged a common law fraudulent concealment claim supported by several specific allegations. First, they alleged Pulte concealed the defects in the retaining wall by burying them. Second, they alleged Pulte knew the preparation of the lot and construction of the wall did not satisfy the standard of good workmanship. Last, they alleged Pulte created dangerous conditions and concealed those conditions from subsequent buyers.

¶ 41 The Arizona Supreme Court has recognized the tort of fraudulent concealment, arising from a transaction, as follows: "One *party to a transaction* who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 496, ¶ 87, 38 P.3d 12, 34 (2002) (emphasis added) (citing Restatement (Second) of Torts § 550 (1976)); *see also King v. O'Rielly Motor Co.*, 16 Ariz. App. 518, 521, 494 P.2d 718, 721 (1972). Fraudulent concealment is "characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter." *Wells Fargo*, 201 Ariz. at 497, ¶ 95, 38 P.3d at 35.

¶ 42 Pulte responds that it was not a party to any transaction with the Sullivans. We agree that being a "party to a transaction" is a necessary element of a fraudulent concealment claim. *Id.* at 496, ¶ 87, 38 P.3d at 34. On this record, the

---

3. Other jurisdictions with consumer protection acts have adopted a similar approach. *See, e.g., Reynolds v. Ryland Group, Inc.*, 340 S.C. 331, 531 S.E.2d 917, 919–20 (2000) (limiting the cause of action to an immediate purchaser); *Todd v. Perry Homes*, 156 S.W.3d 919, 922 (Tex. App.2005) (requiring contractual privity or a

"connection" between defendant seller and consumer such as a representation by or benefit to the initial seller). *But cf. Katz v. Schachter*, 251 N.J.Super. 467, 598 A.2d 923, 926 (N.J.Super.Ct.App.Div.1991) (stating a direct contractual relationship is not a condition precedent to recovery).

Sullivans cannot establish that they were a party to any dealings with Pulte. Thus, the trial court properly dismissed the fraudulent concealment claims.

## ADDITIONAL TORT CLAIMS

¶ 43 The Sullivans alleged multiple negligence counts against Pulte including ordinary negligence, negligent non disclosure, negligent misrepresentation, and negligence per se. These claims were dismissed by the trial court on the basis that they were barred by the ELD. Pulte asserts additional arguments—independent of the ELD—in support of dismissing these additional claims. In granting Pulte's motion to dismiss, the trial court did not rule on the additional arguments presented by Pulte.

¶ 44 On appeal from the granting of a motion to dismiss, we may affirm on any applicable basis, *see Yauch v. Southern Pacific Transportation Co.,* 198 Ariz. 394, 403, ¶ 25, 10 P.3d 1181, 1190 (App.2000), but we are reluctant to affirm on grounds not addressed by the trial court. *Cf. Drew v. United Producers & Consumers Coop.,* 161 Ariz. 331, 335, 778 P.2d 1227, 1231 (1989) ("We do not believe it proper for an appellate court to affirm a dismissal on grounds pertaining to the technical sufficiency of the pleadings when such grounds had not been argued in the trial court and the insufficiency may have been cured if the problem had been properly and timely raised."); *Rhoads v. Harvey Publ'ns, Inc.,* 131 Ariz. 267, 269, 640 P.2d 198, 200 (App.1981) (noting that the power to affirm a summary judgment on grounds not considered by the trial court "must be exercised with extreme caution").

¶ 45 This is an appeal from the granting of a motion to dismiss at an early point in the action. In the exercise of our discretion, we decline to reach these issues that were not addressed by the trial court. Such issues may be addressed upon remand.

## ATTORNEYS' FEES

¶ 46 Pulte sought an award of attorneys' fees based on A.R.S. § 12–341.01(A), arguing that this discretionary attorneys' fees statute was applicable because the Sullivans had brought a claim for breach of the implied warranty of good workmanship and habitability. The trial court agreed and awarded fees to Pulte.

¶ 47 Section 12–341.01(A) provides that the court may award fees to the successful party in "any contested action arising out of a contract, express or implied." The question presented is whether a breach of implied warranty claim arises out of a contract, express or implied, for purposes of § 12–341.01(A).

¶ 48 The fact that an implied warranty claim sounds in contract "does not compel the conclusion that it 'arises out of contract' within the meaning of § 12–341.01(A)." *North Peak,* 227 Ariz. at 170, ¶ 26, 254 P.3d at 409. The Arizona Supreme Court's analysis in *Barmat v. John and Jane Doe Partners A–D,* 155 Ariz. 519, 521, 747 P.2d 1218, 1220 (1987), is controlling. The supreme court determined that A.R.S. § 12–341.01(A) applies to actions arising out of express contracts and implied-in-fact contracts, but not implied-in-law contracts. *Id.* at 521–24, 747 P.2d at 1220–23. The implied warranty of workmanship and habitability is implied-in-law, not implied-in-fact. *See North Peak,* 227 Ariz. at 170, ¶ 26, 254 P.3d at 409. Accordingly, we conclude that § 12–341.01(A) is not applicable to the Sullivans' breach of implied warranty claim.

¶ 49 Pulte cites *Dillig v. Fisher,* 142 Ariz. 47, 51, 688 P.2d 693, 697 (App.1984), an implied warranty of habitability case, in support of its fees award. This court affirmed an award of fees by the trial court in *Dillig* and also awarded fees on appeal, observing that the appeal was a "contested action arising out of contract." *Id.* at 51, 688 P.2d at 697. It does not appear from the opinion, however, that the applicability of A.R.S. § 12–341.01(A) was challenged. More importantly, *Dillig* pre-dates *Barmat* and *North Peak* and is therefore not persuasive on this attorneys' fees issue. Section 12–341.01(A) is not applicable to a breach of implied warranty of workmanship or habitability claim. Accordingly, the trial court erred in awarding attorneys' fees to Pulte on the basis of this statute.

## CONCLUSION

¶ 50 For the foregoing reasons, we affirm the trial court's dismissal of the Sullivans' claims for breach of implied warranty, consumer fraud, and fraudulent concealment. We reverse the dismissal of the remaining counts and the award of attorneys' fees, and remand for further proceedings consistent with this opinion. Both Pulte and the Sullivans have requested an award of attorneys' fees on appeal. As explained above, A.R.S. § 12–341.01(A) is not applicable and we deny these requests. The Sullivans are entitled to recover their taxable costs on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: JON W. THOMPSON, Presiding Judge and MAURICE PORTLEY, Judge.