307 P.3d 1025

**GILBERT TUSCANY LENDER, LLC, an Arizona corporation; and Chandler Heights McQueen Lender, LLC, an Arizona corporation, Plaintiffs/Appellants,**

v.

**WELLS FARGO BANK, a foreign corporation, Defendant/Appellee.**

No. 1 CA–CV 12–0585.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 29, 2013.

Law Offices of Richard L. Strohm, PC By Richard L. Strohm, Phoenix, Attorneys for Plaintiffs/Appellants.

Snell & Wilmer, LLP By Robert M. Kort And Martha E. Gibbs, Julie E. Maurer, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

OROZCO, Judge.

¶1 Gilbert Tuscany Lender, LLC (GT Lender) and Chandler Heights McQueen Lender, LLC (CHM Lender) (collectively, the Lenders) appeal the trial court's order granting the motion for summary judgment filed by Wells Fargo Bank (Wells Fargo). The Lenders alleged that Wells Fargo acted negligently by allowing an individual to open a corporate bank account without determining whether he was authorized to act on behalf of a limited liability company and by failing to obtain documentation that demonstrated that the limited liability company existed. The court found, as a matter of law, that Wells Fargo owed no duty of care to non-customers. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY [1]

¶2 In 2005, GT Lender entered into an agreement to loan funds for the development of a shopping center in Gilbert, Arizona to Vision Financial, LLC (Vision) and Gilbert Tuscany Village, LLC (Village). Later that year, CHM Lender agreed to loan The Reserve at Chandler Heights, LLC (Reserve) funds to develop a residential subdivision in Chandler, Arizona. Chad Kennedy and two other individuals were members of Vision, Village, and Reserve (collectively, the Borrowing Entities).

¶3 Pursuant to the agreements between the Lenders and the Borrowing Entities, the Lenders deposited funds into a construction escrow account that was administered by Chicago Title Insurance Company (Chicago Title). When the Borrowing Entities needed additional funds for the subdivision and shopping center projects, they submitted draw requests and supporting documentation to the Lenders. The Borrowing Entities typi-

---

1. "[W]e view all facts and reasonable inferences therefrom in the light most favorable to the party against whom [summary] judgment was en-

tered." *Bothell v. Two Point Acres, Inc.,* 192 Ariz. 313, 315, ¶2, 965 P.2d 47, 49 (App.1998).

cally requested disbursements payable to specified subcontractors or suppliers. If the Lenders approved the draw, Chicago Title would disburse funds from the Lenders' construction escrow account to the specified payee.

¶ 4 One of the Borrowing Entities' subcontractors, Sun West Builders, Inc. (Sun West), completed framing work on the shopping center project at a contract price of approximately $720,000. Without Sun West's knowledge, the Borrowing Entities submitted numerous falsified invoices and fraudulent draw requests to the Lenders for work purportedly completed by Sun West. Because of these falsified invoices, GT Lender and CHM Lender authorized disbursements to Sun West totaling approximately $1.3 million and $50,000, respectively.

¶ 5 Although he had no authority to act on behalf of Sun West, Kennedy opened a corporate checking account under the name Sun West Builders at a Wells Fargo branch in March 2006. In order to open the account, Kennedy completed and signed a business account application, in which he certified that he was the owner of Sun West Builders, a limited liability company (Sun West Builders, LLC). Kennedy deposited checks payable to Sun West that had been issued from the Lenders' construction escrow account with Chicago Title into the Wells Fargo account. Using this account, Kennedy misappropriated over $600,000 from GT Lender and almost $50,000 from CHM Lender—the difference between the amount disbursed to the Borrowing Entities for the benefit of Sun West and the amount the Borrowing Entities paid to the real Sun West for the work it performed.

¶ 6 The Borrowing Entities defaulted on the loans in March 2007. The Lenders subsequently discovered that Kennedy had submitted fraudulent draw requests and had opened the corporate bank account at Wells Fargo in Sun West's name. In November 2009, the Lenders filed a complaint against Kennedy and his wife (Caree), alleging that they had engaged in fraud.[2] They also sued Wells Fargo and alleged it had acted negligently by allowing Kennedy to open the corporate bank account without determining whether Kennedy was authorized to act on behalf of Sun West Builders, LLC and by failing to obtain documentation that proved that Sun West Builders, LLC existed.[3]

¶ 7 Wells Fargo moved for summary judgment, asserting it was entitled to judgment as a matter of law because it owed no duty of care to the Lenders, "who were not customers of Wells Fargo and had no relation to the Wells Fargo bank account at issue."

¶ 8 The trial court held oral argument on Wells Fargo's motion. It granted the motion, finding that Wells Fargo owed no duty of care to non-customers as a matter of law. Although the Lenders argued the Bank Secrecy Act, 31 U.S.C. §§ 5311–5332 (2012), imposed a duty on banks to verify the identity of depositors, the trial court stated that the "Act is not intended for the benefit of the general public in negligence actions, [and] it creates no duty as described by [the Lenders]."

¶ 9 The Lenders timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 (2003) and –2101.A.1 (Supp.2012).

## DISCUSSION

¶ 10 We review the trial court's entry of summary judgment de novo. *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, 249, ¶ 14, 129 P.3d 966, 971 (App.2006). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990) (citing Arizona Rule of Civil Procedure 56).

2. Kennedy and Caree failed to answer the complaint. The trial court entered a default judgment against Kennedy for more than $600,000, and the Lenders voluntarily dismissed their complaint against Caree with prejudice. Neither Kennedy nor Caree is a party to this appeal.

3. Although Sun West, the corporation that performed the framing work, was in good standing with the Arizona Corporation Commission, no limited liability company called Sun West Builders, LLC existed according to the Commission's records.

¶ 11 The Lenders contend the trial court incorrectly determined that Wells Fargo owed no duty of care to them. To be successful on a negligence claim, "a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). Duty is an obligation requiring the defendant to conform to a certain standard of conduct in order to protect others against unreasonable risks. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). "The existence of a duty is a question of law that we review de novo." *Diaz v. Phx. Lubrication Serv., Inc.*, 224 Ariz. 335, 338, ¶ 12, 230 P.3d 718, 721 (App. 2010). In *Gipson*, the Arizona Supreme Court considered two factors in evaluating the existence of a duty: (1) the relationship between the parties and (2) public policy considerations.[4] *Gipson*, 214 Ariz. at 144–46, ¶¶ 18–25, 150 P.3d at 231–33.

## A. Relationship Between the Parties

¶ 12 In determining whether Wells Fargo owed a duty of care to the Lenders, we first consider the relationship between the parties. "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id.* at 145, ¶ 18, 150 P.3d at 232. However, the Lenders do not assert they have a special relationship with Wells Fargo that would establish a duty of care. Furthermore, the Lenders acknowledge that they were not customers or depositors of Wells Fargo.

¶ 13 Courts in several jurisdictions, including Arizona, have rejected the argument that banks owe a duty to non-customers. *See, e.g., Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir.2002) (collecting cases); *Kesselman v. Nat'l Bank of Ariz.*, 188 Ariz. 419, 421–22, 424, 937 P.2d 341, 343–44, 346 (App.1996) (stating that a bank owed

no duty to disclose irregularities in a fiduciary account to third-party beneficiaries who were not customers of the bank); *Ramsey v. Hancock*, 79 P.3d 423, 425, ¶ 9 (Utah Ct.App. 2003) (collecting cases). We therefore decline to find a duty of care based on the relationship between Wells Fargo and the Lenders.

## B. Public Policy

### Bank Secrecy Act and the Restatement

¶ 14 Having declined to recognize a duty based on the particular relationship between the parties, we turn to public policy considerations. Public policy can be found in statutes and common law. *Gipson*, 214 Ariz. at 146 n. 4, ¶ 24, 150 P.3d at 233 n. 4. A statute may establish a duty of care if it "is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation...." *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 36, at 229–30 (5th ed.1984) (internal quotation marks omitted)).

¶ 15 The Lenders assert that, as a matter of public policy, Wells Fargo owed them a duty to exercise reasonable care when opening a corporate bank account. They base this assertion, in large part, on the requirements of the Bank Secrecy Act.

¶ 16 The introduction to the Bank Secrecy Act states that "the purpose of this subchapter ... [is] to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 U.S.C. § 5311. Based on the statute's language, we conclude that the statute was not intended to create a duty on the part of banks to third parties

4. The *Gipson* court expressly held that foreseeability should not be considered in determining duty, because "[f]oreseeability. is more properly applied to the factual determinations of breach and causation than to the legal determination of duty." *Gipson*, 214 Ariz. at 144, ¶¶ 15–17, 150 P.3d at 231.

such as Lenders. The Bank Secrecy Act imposes on banks an obligation to the government, not to a remote victim. *See* Restatement (Second) of Torts § 288 cmt. b (1965) ("Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large.... Such provisions create an obligation only to the state....").

¶ 17 Moreover, there is no private right of action for the violation of the Bank Secrecy Act. *See Hanninen v. Fedoravitch*, 583 F.Supp.2d 322, 326 (D.Conn.2008) (noting that the Bank Secrecy Act does not authorize a private right of action); *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F.Supp.2d 875, 923 (W.D.Mich.2010) (same), *aff'd*, 712 F.3d 917 (6th Cir.2013). Because the Act does not create a private right of action, we decline to recognize a duty of care that is predicated upon the statute's monitoring requirements. *See Armstrong v. Am. Pallet Leasing Inc.*, 678 F.Supp.2d 827, 875 (N.D.Iowa 2009) ("Because the Bank Secrecy Act does not permit a private right of action, it follows that it cannot be construed as giving rise to a duty of care flowing to plaintiffs in this case.").

■ ¶ 18 The Lenders also cite the Restatement (Second) of Torts § 324A (1965) for the proposition that a duty of care should be imposed on Wells Fargo. Section 324A states, in pertinent part, that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for *physical harm* resulting from his failure to exercise reasonable care to protect his undertaking....

(emphasis added). Because the Lenders did not suffer any physical harm, we decline to apply § 324A to impose a duty on Wells Fargo.

¶ 19 The Lenders cite several cases that they assert reflect a movement to "de-emphasize relationship as the best test of duty in favor of a broader based public policy test." Although public policy is an important consideration in determining the existence of a duty, *see Gipson*, 214 Ariz. at 145–46, ¶¶ 23–24, 150 P.3d at 232–33, the cases the Lenders cite are distinguishable. While the courts in those cases focused on public policy considerations, in each case the imposition of a duty of care was supported by a state statute or a Restatement section. *See id.* at 147, ¶ 32, 150 P.3d at 234 (finding that the defendant owed a duty of care based on Arizona statutes that prohibit the distribution of prescription drugs to people who are not covered by the prescription); *Stanley v. McCarver*, 208 Ariz. 219, 220–21, 223–24, ¶¶ 2, 14–15, 92 P.3d 849, 850–51, 853–54 (2004) (applying Restatement § 324A to find that a duty existed, despite the absence of a doctor-patient relationship, when a doctor detected abnormalities during a pre-employment tuberculosis screening and failed to notify the plaintiff, who subsequently was diagnosed with lung cancer); *Lombardo v. Albu*, 199 Ariz. 97, 98, 100, ¶¶ 1, 11, 14 P.3d 288, 289, 291 (2000) (finding that the Restatement imposed liability on a buyer's real estate agent for representations made to the seller, while acting on behalf of the buyer); *Estate of Maudsley v. Meta Servs., Inc.*, 227 Ariz. 430, 436, ¶ 22, 258 P.3d 248, 254 (App. 2011) (holding that defendants owed a duty of reasonable care based on state statutes that impose obligations on entities that are licensed to screen, evaluate, and treat the mentally ill).

¶ 20 In sum, the Lenders' contention that the Bank Secrecy Act and Restatement § 324A support the imposition of a duty of care on Wells Fargo is unavailing. Furthermore, the Lenders have not cited, and we have not found, any other equivalent statute or Restatement section that might impose a duty on banks in this situation. Accordingly, we reject the Lenders' contention that public policy considerations created a duty of care in this case.

*Industry Standards and Internal Policies*

■ ¶ 21 The Lenders also contend that requiring proof of a corporate entity's existence, as well as proof that the person opening the account has the authority to act on behalf of that entity, is a "universal and standard practice" in the banking industry;

therefore, a duty of reasonable care should be recognized. However, "[s]tandard industry practice addresses primarily whether there has been a breach of duty," rather than whether a duty exists. *See Diaz*, 224 Ariz. at 341–42, ¶¶ 26–27, 230 P.3d at 724–25 (compiling cases that reject the notion that an alleged industry standard can be used to determine whether a duty exists). We therefore reject the argument that industry standards impose a duty on Wells Fargo to request documentation before opening a corporate account.

¶ 22 The Lenders also assert that Wells Fargo acted negligently because it violated its own internal policies by failing to request documents that established that Kennedy was authorized to act on behalf of Sun West Builders, LLC or that the entity existed. On this point, we find *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 56 Cal.Rptr.2d 756 (1996), persuasive. In that case, the California Court of Appeal found the bank's failure to follow internal procedures when opening a partnership account was irrelevant because the "[v]iolation of a self-imposed rule does not create actionable negligence unless plaintiff (1) suffers the type of harm sought to be prevented by the rule and (2) is a member of the class of people for whose protection the rule was promulgated." *Id.* at 762. *Software Design* held that account opening and screening procedures exist to protect the banks, not strangers with whom the banks do no business. *Id.* Thus, no duty was created by Wells Fargo's failure to comply with its policy to ask for corporate documents before opening a corporate account.

## CONCLUSION

¶ 23 For the foregoing reasons, we agree with the trial court's finding that Wells Fargo did not owe a duty of care to the Lenders. Accordingly, we affirm the summary judgment entered in favor of Wells Fargo.

CONCURRING: ANDREW W. GOULD, Presiding Judge and MARGARET H. DOWNIE, Judge.