354 P.3d 424

John F. SULLIVAN and Susan B. Sullivan, Plaintiffs/Appellants,

v.

PULTE HOME CORPORATION, Defendant/Appellee.

No. 1 CA–CV 14–0199.

Court of Appeals of Arizona, Division 1.

July 28, 2015.

John F. Sullivan Esq. By John F. Sullivan, Phoenix, Counsel for Plaintiffs/Appellants.

Dickinson Wright PLLC By Stephen E. Richman, Anne L. Tiffen, Phoenix, Co–Counsel for Defendant/Appellee.

Ellen M. Bublick, Tucson, Co–Counsel for Defendant/Appellee.

Presiding Judge MARGARET H. DOWNIE delivered the Opinion of the Court, in which Judge RANDALL M. HOWE joined and Judge PATRICIA K. NORRIS dissented.

## OPINION

DOWNIE, Judge:

¶ 1 This appeal presents the question whether a subsequent (i.e., non-original) homeowner may maintain a negligence cause of action against a homebuilder for economic losses arising from latent construction defects unaccompanied by physical injury to persons or other property. The homeowners in this case contend that a public policy-based tort duty arises from a municipal building code, as well as from statutes and regulations governing residential contractors. We disagree and therefore affirm the judgment of the superior court.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Defendant/Appellee Pulte Home Corporation developed and built homes in a

Phoenix hillside community. In 2000, Pulte sold the home at issue in these proceedings to the original homeowners, who, in 2003, sold the property to Plaintiffs/Appellants John and Susan Sullivan. In 2009, the Sullivans discovered problems with the home's hillside retaining wall. An engineering firm they retained concluded that Pulte had constructed the retaining wall and prepared the home site without proper structural and safety components, including footings, rebar, and adequate drainage and grading. Pulte declined the Sullivans' request to make repairs.

¶ 3 The Sullivans sued Pulte, alleging eleven separate counts, including several negligence-based claims. The Sullivans sought to recover out-of-pocket costs associated with identifying and remediating the alleged defects, as well as damages for diminution in the property's value. Pulte moved to dismiss all counts of the complaint pursuant to Arizona Rule of Civil Procedure 12(b)(6), arguing that the implied warranty claim was barred by the statute of repose and that the tort claims were impermissible under the economic loss doctrine ("ELD").[1] The superior court granted Pulte's motion, and the Sullivans appealed.

¶ 4 This Court affirmed the dismissal of all counts of the Sullivans' complaint except the negligence claims. *Sullivan v. Pulte Home Corp.*, 231 Ariz. 53, 60, ¶¶ 30–31, 290 P.3d 446, 453 (App.2012), *vacated in part,* 232 Ariz. 344, 306 P.3d 1 (2013). We held that because the Sullivans were not in privity with Pulte and had no contract with the homebuilder, the ELD did not bar their negligence claims. Although the Arizona Supreme Court vacated the portion of our opinion discussing the ELD, it nevertheless agreed that the ELD did not bar the Sullivans' negligence claims. *Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 345–47, ¶¶ 7, 11, 15, 306 P.3d 1, 2–4 (2013) ("*Sullivan I*"). *Sullivan I* held that the ELD "protects the expectations of contracting parties, but, in the absence of a contract, it does not pose a barrier to tort claims that are otherwise permitted by substantive law." *Id.* at 346, ¶ 11,

306 P.3d at 3. Instead, courts must "consider the applicable substantive law to determine if non-contracting parties may recover economic losses in tort." *Id.* at 347, ¶ 14, 306 P.3d at 4. The supreme court cautioned that its opinion should not be read as implying that the Sullivans would ultimately prevail on their negligence claims, stating:

> Our holding that the economic loss doctrine does not bar the Sullivans' tort claims does not, of course, imply that those claims will ultimately succeed. *Cf. Flagstaff Affordable Hous.*, 223 Ariz. at 327–28, ¶ 39, 223 P.3d at 671–72 (directing courts to consider applicable substantive law to determine if non-contracting parties may recover economic losses in tort); Draft Restatement § 6(2), reporter's note to cmt. c (noting division of authority but concluding that subsequent home purchasers should not recover in tort from homebuilder for negligent construction). As the court of appeals noted, Pulte made other arguments challenging the legal sufficiency of the tort claims that were not addressed by the trial court, which may consider those arguments in the first instance on remand.

*Sullivan I*, 232 Ariz. at 347, ¶ 14, 306 P.3d at 4.

¶ 5 On remand to the superior court, Pulte moved to dismiss the negligence claims pursuant to Rule 12(b)(6), arguing "a homebuilder such as Pulte does not owe a duty of care to a subsequent purchaser (such as plaintiffs) to prevent them from economic harm." The superior court granted Pulte's motion, and the Sullivans again timely appealed.

## DISCUSSION

¶ 6 "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Gipson v. Kasey,* 214 Ariz. 141, 143, ¶ 11, 150 P.3d 228, 230 (2007). "Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id.* at 145, ¶ 18, 150 P.3d at 232.

---

1. "The economic loss doctrine prohibits certain tort actions seeking pecuniary damage[s] not arising from injury to the plaintiff's person or from physical harm to property." *Sullivan v. Pulte Home Corp.,* 232 Ariz. 344, 345, ¶ 8, 306 P.3d 1, 2 (2013).

Additionally, "[p]ublic policy may support the recognition of a duty of care." *Id.* at 145, ¶ 23, 150 P.3d at 232. "In many instances, the legislature reflects public policy by codifying certain duties and obligations." *Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 160, ¶ 17, 318 P.3d 871, 876 (App.2014). We consider the duty question *de novo.* *See N. Peak Constr., LLC v. Architecture Plus, Ltd.*, 227 Ariz. 165, 167, ¶ 13, 254 P.3d 404, 406 (App.2011) (dismissal for failure to state a claim reviewed *de novo* ); *Home Builders Ass'n of Cent. Ariz. v. City of Maricopa*, 215 Ariz. 146, 149, ¶ 6, 158 P.3d 869, 872 (App. 2007) (questions of law and statutory interpretation reviewed *de novo* ).

¶ 7 At oral argument before this Court, the Sullivans disavowed any assertion that a duty exists based on common law principles of negligence. They instead premise their duty argument on a municipal building code and on Arizona statutes and regulations governing residential contractors. The Sullivans contend they "fall within the class of persons protected by Arizona's public policy framework which mandates specific design and construction standards for safe residential construction." Specifically, they argue:

> The duties imposed by law upon Pulte are found in: the Building Code adopted by the City of Phoenix (specifying minimum standards in design and construction to protect, inter alia, life or limb, health, property); the Arizona Administrative Code, AAC R4–9–108 (Registrar of Contractors ... regulations establishing Workmanship Standards); and, A.R.S. § 32–1154 (mandating compliance with building codes and ROC regulations).

¶ 8 Turning first to the City of Phoenix Uniform Building Code ("Building Code"), the Sullivans rely on its stated purpose of "provid[ing] minimum standards to safeguard life or limb, health, property and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures ...." Building Code § 101.2. However, that same section of the Building Code specifically disclaims any intent to protect or benefit a particular group or class, stating, "[T]he purpose of this code

is not to create or otherwise establish or designate any particular class or group of persons who will or should be especially protected or benefited by the terms of this code." *Id.*

¶ 9 A statute or regulation typically gives rise to a tort duty premised on public policy only if it "is designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994). It would be anomalous, as well as inconsistent with this well-established legal tenet, to premise a tort duty on a regulatory scheme that expressly eschews any intent to protect or benefit a class or group of persons. *Cf. Tellez v. Saban*, 188 Ariz. 165, 169, 933 P.2d 1233, 1237 (App.1996) (rejecting negligence *per se* claim based on statute prohibiting rental car company from leasing to unlicensed drivers because "statutes intended for the protection of the public at large rather than an individual or class of persons do not create the standard of conduct required of a reasonable person"); *Jackson v. City of Seattle*, 158 Wash.App. 647, 244 P.3d 425, 430, ¶ 16 (2010) ("[Plaintiff] does not persuasively explain how we could view the [Seattle] stormwater code as a foundation for a negligence action in spite of the express disclaimer of a purpose to designate a protected class and the express terms making the code enforceable only by the city."). Thus, even assuming for the sake of argument that a municipal building code is of sufficient legal stature to support imposition of public policy-based tort duties, the code at issue here reveals no intention to protect or benefit subsequent homeowners who experience economic loss.

¶ 10 Although Arizona's appellate courts have held that statutes enacted for public safety may support public policy-based tort duties, they have done so largely in the context of injury and death cases. *See, e.g., Gipson*, 214 Ariz. at 146, ¶ 26, 150 P.3d at 233 (defendant providing prescription drugs to woman who subsequently gave them to third party owed duty based on criminal statute "designed to avoid injury or death to people

who have not been prescribed prescription drugs"); *Estate of Hernandez,* 177 Ariz. at 251–53, 866 P.2d at 1337–39 (statute making it unlawful to provide alcohol to minors supported duty by defendants serving alcohol to minor driver who later injured plaintiff); *Alhambra Sch. Dist. v. Maricopa Cnty. Superior Court,* 165 Ariz. 38, 42–43, 796 P.2d 470, 474–75 (1990) (school district assumed duty of care to persons using crosswalk it established and could be liable for personal injury caused by deviation from statutory requirements); *Ontiveros v. Borak,* 136 Ariz. 500, 509–11, 667 P.2d 200, 209–11 (1983) (dram shop statutes as basis for tavern owner's duty to pedestrian injured by drunk driver served in violation of statute); *Estate of Maudsley v. Meta Servs., Inc.,* 227 Ariz. 430, 436, ¶ 21, 258 P.3d 248, 254 (App.2011) (duty of care based on statutes imposing obligations on entities that screen, evaluate, and treat the mentally ill); *Daggett v. Cnty. of Maricopa,* 160 Ariz. 80, 84–85, 770 P.2d 384, 388–89 (App.1989) (regulations requiring inspection of swimming facilities imposed duty on county for benefit of patron injured by unsafe conditions). Distinguishing between duties owed in actions alleging death or personal injury and duties arising in cases involving purely economic loss is consistent with a noted judicial reluctance to recognize duties "to exercise reasonable care for the purely economic well-being of others." *Lips v. Scottsdale Healthcare Corp.,* 224 Ariz. 266, 268, ¶ 11, 229 P.3d 1008, 1010 (2010); *cf. Gilbert Tuscany Lender, LLC v. Wells Fargo Bank,* 232 Ariz. 598, 601–02, ¶¶ 15–17, 307 P.3d 1025, 1028–29 (App.2013) (declining to extend tort duties based on Bank Secrecy Act in case alleging economic loss).

¶ 11 Our conclusion that the Building Code does not support imposition of a public policy-based duty for purely economic loss finds support in reported decisions from other jurisdictions. *See, e.g., Parker Bldg. Servs. Co. v. Lightsey,* 925 So.2d 927, 931 (Ala.2005) (rejecting negligence *per se* claim premised on building code violations because code "does not delineate a specific class of persons it seeks to protect distinguishable from the public"); *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC,* 221 P.3d 234, 247–48,

¶¶ 41–44 (Utah 2009) (refusing to find building codes create a duty for purposes of economic loss because "assuming a duty is owed under the statute [requiring compliance with building codes], that duty is to the public"); *Jackson,* 244 P.3d at 429 ("Building codes and other similar municipal codes do not typically serve as a basis for tort liability because they are enacted merely for purposes of public safety or for the general welfare."); *but see Moglia v. McNeil Co., Inc.,* 270 Neb. 241, 700 N.W.2d 608, 618–19 (2005) (holding, without analysis, that "[w]ith respect to appellants' allegation that the defects violated Omaha building codes, we agree with appellants that building codes create a legal duty, thus giving rise to a potential negligence claim").

¶ 12 Nor do we find Arizona's statutory and administrative schemes governing licensed contractors a sufficient basis for holding that homebuilders owe public policy-based tort duties to subsequent homeowners for economic loss. Like the Building Code, the governance of licensed contractors has a broad, general purpose: "to protect the public health, safety and welfare by licensing, bonding and regulating contractors engaged in construction." 2014 Ariz. Sess. Laws, ch. 247, § 11 (2d Reg. Sess.); *see also* 2004 Ariz. Sess. Laws, ch. 16, § 3 (2d Reg. Sess.); 1994 Ariz. Sess. Laws, ch. 7, § 3 (2d Reg. Sess.). Our supreme court has commented on the purpose of regulating contractors as follows:

> It appears to us upon reviewing the legislative history of the evolution of the contractor's code, that the legislature intended (1) to control contractors by issuance, suspension or revocation of licenses, and (2) after passage of the 1952 statute, to offer additional protection to persons damaged by failure of the contractor to perform his contract in the manner required by the statute, or to pay for materials or labor, by requiring bonds to insure payment of such damages.

*Emp't Sec. Comm'n of Ariz. v. Fish,* 92 Ariz. 140, 144, 375 P.2d 20, 23 (1962) (emphasis added); *see also Beazer Homes Ariz., Inc. v. Goldwater,* 196 Ariz. 98, 101, ¶ 14, 993 P.2d 1062, 1065 (App.1999) (The "general purpose of licensing contractors" is "to regulate the

conduct of contracting and protect the public from unscrupulous acts.").

¶ 13 The policy underpinnings identified in *Fish* do not exist here. The Sullivans have no contract with Pulte, and they concede that no duty arises from a relationship between the parties. Although licensed contractors are subject to discipline for, *inter alia*, "[d]eparture from or disregard of ... any building code of the state or any political subdivision of the state in any material respect," A.R.S. § 32–1154(A)(2), this regulatory provision does not support imposing public policy-based tort duties in favor of subsequent property owners asserting economic loss. Professional codes frequently establish standards for licensees that do not give rise to private causes of action. *See, e.g.*, Ariz. R. Sup.Ct. 42, Preamble ¶ 20 (violation of Rules of Professional Conduct does not give rise to cause of action against licensed attorney).

¶ 14 Should the Arizona Legislature deem it appropriate to expand civil remedies based on construction-related statutes and codes, it obviously may do so. *See, e.g.*, Fla. Stat. Ann. § 553.84 (permitting certain civil actions premised on building code violations). Such a broad expansion of the law is a policy-laden decision best suited for the legislative branch of government. *See Jackson*, 244 P.3d at 430 ("When a court decides that a violation of a statute shall be considered in determining liability for negligence, the motivation for doing so is to give effect to the will of the legislature."). Especially given the Sullivans' disavowal of any common law-based duty, we respectfully disagree with our dissenting colleague's conclusion that Arizona courts should recognize a duty premised on codes and ordinances that offer no indication such a result was intended. *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 36, at 222 (5th ed. 1984) (discussing reliance on criminal statutes and ordinances as basis for negligence claims, noting "courts in such cases have been careful not to exceed the purpose which they attribute to the legislature. This judicial self-restraint is rooted in part in the theory of the separation of powers.").

¶ 15 Finally, our conclusion is consistent with, though not dependent on, the Restatement (Third) of Torts: Liability for Economic Harm ("Restatement"), which our supreme court cited in *Sullivan I*. 232 Ariz. at 347, ¶ 14, 306 P.3d at 4. Section 1(a) of the Restatement states that "[a]n actor has no general duty to avoid the unintentional infliction of economic loss on another," explaining that such duties are "notably narrower" than duties to prevent physical harm and "that duties to avoid causing economic loss require justification on more particular grounds than duties to avoid causing physical harm." *See* Restatement § 1 cmt. a-b (Tentative Draft No. 1, 2012). The Restatement's distinction between causes of action for economic loss and those alleging personal injury is consistent with Arizona law. *See, e.g.*, *Lips*, 224 Ariz. at 268, ¶ 11, 229 P.3d at 1010. The Restatement also expressly rejects the imposition of a duty of care on homebuilders for economic losses that subsequent homeowners experience due to latent construction defects. *See* Restatement § 6 cmt. c (Tentative Draft No. 2, 2014) ("Liability [to subsequent purchasers] fails as a doctrinal matter because the defendant did not act for the purpose of providing a basis for reliance by the plaintiff.").

## CONCLUSION

¶ 16 For the foregoing reasons, the superior court properly dismissed the Sullivans' negligence claims. We deny both parties' requests for attorneys' fees incurred on appeal. However, as the prevailing party on appeal, Pulte is entitled to recover its taxable costs upon compliance with ARCAP 21.

NORRIS, J., dissenting:

¶ 17 According to the majority, the issue in this appeal is "whether a subsequent (i.e., non-original) homeowner may maintain a negligence cause of action against a homebuilder for economic losses arising from latent construction defects unaccompanied by physical injury to persons or other property." *See supra* ¶ 1. This formulation of the issue does not fully address what is at stake here. The Sullivans sued Pulte to recover the monies they had spent to repair a retaining wall that, according to their engineering firm, was failing and in danger of collapsing and/or

causing a landslide. The Sullivans alleged this dangerous condition existed because Pulte prepared the home site and constructed the wall in violation of applicable building standards, including the City of Phoenix Uniform Building Code (1997) ("Building Code"). Thus, what is at stake here is directly related to what the Building Code and associated statutes and regulations were designed to prevent—the construction of unsafe structures that pose a risk to public safety and property. And, what is at stake here is directly related to what is the quintessential purpose for recognizing a duty of care—to protect against unreasonable risks of harm to persons and property. Accordingly, the issue in this case is whether a homebuilder should be subject to a duty of care, and thus answerable in negligence, to a subsequent homebuyer who is seeking to recover the monies he or she spent in repairing dangerous latent construction defects that pose an unreasonable risk of, but have not yet caused, physical injury to persons or other property. In my view, the answer to this question is "yes." Thus, with respect, I dissent.

¶ 18 A cause of action for negligence requires the existence of a duty of care, which is a determination that a defendant is under a legal obligation to conform to a particular standard of conduct to protect others against unreasonable risks of harm. *Gipson v. Kasey,* 214 Ariz. 141, 143, ¶¶ 9–10, 150 P.3d 228, 230 (2007). Duties of care may arise from public policy considerations, *id.* at 145, ¶ 23, 150 P.3d at 232, and legislative enactments as well as administrative regulations that codify or impose duties and obligations may reflect these public policy considerations. *Estate of Maudsley v. Meta Services, Inc.,* 227 Ariz. 430, 435, ¶ 15, 258 P.3d 248, 253 (App.2011) (state statutes); *Daggett v. Maricopa Cnty.,* 160 Ariz. 80, 82–85, 770 P.2d 384, 386–89 (App.1989) (regulations). And, a statute or regulation may give rise to a duty of care if it is "designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Gipson,* 214 Ariz. at 146, ¶ 25, 150 P.3d at 233 (internal quotation marks omitted); *see also* W. Page Keeton et al., *Prosser and Keeton*

*on the Law of Torts* § 36, at 229–30 (5th ed. 1984) *cited with approval in Estate of Hernandez v. Ariz. Bd. of Regents,* 177 Ariz. 244, 253, 866 P.2d 1330, 1339 (1994).

¶ 19 Although the majority acknowledges these principles, it concludes the Building Code and statutes and regulations governing contractors the Sullivans rely on do not reveal an "intention to protect or benefit subsequent homeowners who experience economic loss." See *supra* ¶¶ 9, 12. I believe the majority's conclusion is grounded on a misperception regarding what the Building Code and associated statutes and regulations were designed to do and on an overly restrictive view of Arizona tort law.

¶ 20 The Building Code was designed to protect against risks to health and property posed by unsafe structures. The Building Code states:

> The purpose of this code is to provide minimum standards to safeguard life or limb, health, property and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures ....

*Id.* at § 101.2. The Building Code specifically addresses minimum standards for the construction of retaining walls. *Id.* at ch. 18.

¶ 21 The Arizona Legislature has incorporated the public safety function of local building codes into the public policy of this state. In reauthorizing its statewide regulation of the construction industry, *see* A.R.S. §§ 32–1101 to –1171 (2007 & Supp.2014), the Legislature has sought "to protect the public health, safety and welfare by licensing, bonding and regulating contractors engaged in construction." 2014 Ariz. Sess. Laws, ch. 247, § 11 (2d Reg. Sess.); 2004 Ariz. Sess. Laws, ch. 16, § 3 (2d Reg. Sess.); 1994 Ariz. Sess. Laws, ch. 7, § 3 (2d Reg. Sess.). Among the statutory grounds for revoking a contractor's license is "[d]eparture from or disregard of ... any building code of the state or any political subdivision of the state in any material respect that is prejudicial to another without consent of the owner" or other authorized representative. A.R.S. § 32–1154(A)(2). Indeed, although not cited

by the Sullivans, the Legislature recently underscored the significance it ascribes to building codes by passing House Bill 2578. 2015 Ariz. Sess. Laws, ch. 60, §§ 1–8 (1st Reg. Sess.). House Bill 2578, codified in A.R.S. §§ 12–1361 to –1366, 33–2001 & –2002 (West, Westlaw through 1st Reg. Sess. of 52d Leg.), treats a violation of a building code as a "construction defect," that is, "a material deficiency in the design, construction, [or] manufacture" of a home. *Id.* at § 1.

¶ 22 Further, exercising the authority granted to it by the Legislature to "[m]ake rules ... necessary to effectually carry out" the Legislature's intent, A.R.S. § 32–1104(5), the Registrar of Contractors has further emphasized the importance of complying with local building codes. In adopting "minimum standards for good and workmanlike construction," *id.*, the Registrar has required contractors to "perform all work in accordance with any applicable building codes." A.A.C. R4–9–108(B).

¶ 23 The Sullivans suffered harm as a result of what the Building Code and associated statutes and regulations were designed to prevent: construction of an unsafe structure that posed a risk of harm to persons and property. As I noted above, according to the Sullivans' engineering firm, the retaining wall was failing and in danger of collapsing and/ or causing a landslide. Pulte's failure to comply with the Building Code resulted in structural defects that created a risk to "life or limb, health, property and public welfare." Building Code § 101.2. Faced with this risk, the Sullivans paid to repair the retaining wall. In doing so, they assumed a burden that—under the public policy of this state— Pulte should have carried when it built the house.

¶ 24 The majority discounts the protective purpose of the Building Code and associated statutes and regulations because the Building Code "disclaims any intent to protect or benefit a particular group or class," see *supra* ¶¶ 8–9, and the statutes and regulations discussed above reflect a broad, general purpose to protect the public at large rather than any particular group such as subsequent homebuyers like the Sullivans. See *supra* ¶ 12. Implicit in the majority's reasoning is

the belief that for a statute or regulation to serve as the basis for a duty of care, it must benefit a class of persons narrower than the general public. See *supra* ¶¶ 9–10. Indeed, the majority cites cases from other jurisdictions which require a building code or statute to benefit a class of persons narrower than the general public. See *supra* ¶ 11.

¶ 25 Arizona law is not so restrictive. Arizona courts have frequently defined "the class of persons to be protected" broadly, encompassing "all those likely to be injured by the [statutory or regulatory] violation," Keeton et al., *supra*, § 36 at 224, as long as the injury is the type the statute was designed to prevent. See *Gipson*, 214 Ariz. at 146, ¶ 26, 150 P.3d at 233 (defendant owed duty of care to decedent based on statutes prohibiting distribution of prescription drugs to persons not covered by prescription; statutes "designed to avoid injury or death to people who have not been prescribed prescription drugs") (internal quotation marks omitted); *Estate of Hernandez*, 177 Ariz. at 253, 866 P.2d at 1339 (non-licensee social host who served minor alcohol owed duty of care to third party harmed by minor based, in part, on statute making it a crime for anyone to furnish alcohol to a minor; statute "constitutes legislative recognition of the foreseeable danger to both the patron and third parties, and an effort to meet that danger by enactment of laws designed to regulate the industry, to protect third persons") (internal quotation marks omitted); *Alhambra Sch. Dist. v. Maricopa Cnty. Superior Court*, 165 Ariz. 38, 42–43, 796 P.2d 470, 474–75 (1990) (school district that established school crosswalk pursuant to statutory procedure "assumed a duty of care to 'persons' using the crosswalk, not just students of the abutting school" and could be held liable for injury caused by deviation from statutory requirements); *Ontiveros v. Borak*, 136 Ariz. 500, 509–11, 667 P.2d 200, 209–11 (1983) (tavern owner who served alcohol to intoxicated patron owed duty of care to third-party injured by patron pursuant to statutes "intended to regulate the business" of selling alcohol, for, *inter alia*, purpose of promoting public safety) *superseded by statute on other grounds as recognized by Booth*

*v. State*, 207 Ariz. 61, 83 P.3d 61 (App.2004); *Daggett*, 160 Ariz. at 84–85, 770 P.2d at 388–89 (public safety regulations requiring inspection of swimming facilities imposed duty of care on county to protect patron injured by allegedly unsafe conditions); *cf. Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 601–02, ¶¶ 15–16, 307 P.3d 1025, 1028–29 (App.2013) (statute did not impose duty of care on bank to protect third party lenders from unauthorized acts of bank's customer; statute imposed obligations on banks to aid government, not to protect remote victim); *Tellez v. Saban*, 188 Ariz. 165, 169, 933 P.2d 1233, 1237 (App.1996) (rejecting negligence per se claim based on statute prohibiting rental car company from renting car to unlicensed driver; statute intended to further state's interest in requiring all persons who operate motor vehicles on public highways to be licensed).

¶ 26 The majority suggests the Arizona cases cited above which involved statutes enacted for the safety of the general public and not for the safety of any particular group or class are distinguishable because the statutes were applied "in the context of injury and death cases." See *supra* ¶ 10. Stated more directly, the majority believes public safety statutes can serve as a basis for a duty of care only if the statutory or regulatory violation caused personal injury or death. Thus, under the majority's view of Arizona law, the Sullivans have not suffered the type of harm the Building Code and related statutes and regulations were designed to prevent because they repaired the defective retaining wall before it could fail and cause any harm to persons or property. But, under Arizona law, a duty of care is a determination that a defendant is under a legal obligation to conform to a particular standard of conduct to protect others against the unreasonable risk of harm. *Gipson*, 214 Ariz. at 143, ¶ 10, 150 P.3d at 230. The Building Code and related statutes and regulations were designed to

prevent and protect against the risk of harm caused by shoddy construction, and a subsequent homebuyer's repair of the shoddy construction before it can harm does not mean the risk of harm never existed.

¶ 27 In *Council of Co–Owners Atlantis Condo., Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336 (1986), the Maryland Court of Appeals recognized this point. There, a condominium association and three condominium owners sued the contractor, developer, and architects in negligence for the cost of repairing a latent and unreasonably dangerous condition. *Id.* at 338. The court held the defendants were subject to a duty of care and that the existence of such a duty of care "should depend upon the risk generated by the negligent conduct, rather than upon the fortuitous circumstances of the nature of the resultant damage," explaining:

> If there is a defect in a stairway and the purchaser repairs the defect and suffers an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury? Should it not put those who prevent personal injury on the same level as those who fail to anticipate it?

*Id.* at 345 (quoting *Barnes v. Mac Brown & Co.*, 264 Ind. 227, 342 N.E.2d 619, 621 (1976)); *accord Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1044–46 (Colo.1983) (citing cases; holding subsequent purchaser of home may assert negligence claim against builder for latent construction defects that have not caused personal injury or damage to other property) *cited with approval in Woodward v. Chirco Const. Co., Inc.*, 141 Ariz. 514, 515–16, 687 P.2d 1269, 1270–71 (1984).[2]

¶ 28 The Sullivans suffered the type of harm the Building Code and related statutes

---

**2.** Although *Woodward* cited *Cosmopolitan Homes* with approval, I do not believe *Woodward* necessarily accepted *Cosmopolitan's* conclusion that a homebuilder owes a duty of care to a subsequent purchaser for latent defects that cause only economic losses. As our supreme court recognized in *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 324, ¶ 19, 223 P.3d

664, 668 (2010), the issue in *Woodward* concerned the limitations period for actions for breach of the implied warranty. Further, such a reading of *Woodward* would fly in the face of the supreme court's cautionary warning in *Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 347, ¶ 14, 306 P.3d 1, 4 (2013).

and regulations were designed to prevent and are within the class of persons the Building Code and related statutes and regulations were designed to protect. I believe Pulte owed the Sullivans a duty of care and should be answerable in negligence for the monies the Sulllivans spent in repairing the latent construction defects. *See Kennedy v. Columbia Lumber and Mfg. Co., Inc.,* 299 S.C. 335, 384 S.E.2d 730, 737 (1989) ("[V]iolation of a building code violates a legal duty for which a builder can held liable in tort for proximately caused losses.").

¶ 29 In reaching this conclusion I acknowledge, as the majority notes at ¶ 10, that the Arizona Supreme Court has explained that courts are generally reticent to recognize duties "to exercise reasonable care for the purely economic well-being of others, as distinguished from their physical safety or the physical safety of their property." *Lips v. Scottsdale Healthcare Corp.,* 224 Ariz. 266, 268, ¶ 11, 229 P.3d 1008, 1010 (2010). To the extent this reticence is relevant here—given Pulte's alleged negligence implicated the physical safety of the Sullivans and their property—it does not outweigh the reasons for recognizing a duty of care. As our supreme court has also explained, the reticence to find a duty when only economic harm has resulted "reflects concerns to avoid imposing onerous and possibly indeterminate liability on defendants and undesirably burdening courts with litigation. Consequently, commentators have recognized that 'liability for negligence [in such cases] . . . must depend upon the existence of some special reasons for finding a duty of care.'" *Id.* at ¶ 11 (citation omitted) (quoting William L. Prosser, *The Law of Torts* § 130, at 952 (1971)).

¶ 30 The public policies the Building Code and related statutes and regulations express constitute the requisite "special reasons for finding a duty of care." Indeed, these policies mirror the reasons identified by the Arizona Supreme Court for extending the implied warranty of workmanship and habitability to homeowners not in privity with the homebuilder, thereby allowing a subsequent purchaser to recover economic losses arising from latent construction defects. As the court explained in *Richards v. Powercraft Homes, Inc.:*

> [T]hat house-building is frequently undertaken on a large scale, that builders hold themselves out as skilled in the profession, that modern construction is complex and regulated by many governmental codes, and that homebuyers are generally not skilled or knowledgeable in construction, plumbing, or electrical requirements and practices—are equally applicable to subsequent homebuyers. Also, we note that the character of our society is such that people and families are increasingly mobile. Home builders should anticipate that the houses they construct will eventually, and perhaps frequently, change ownership. The effect of latent defects will be just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work. Because the builder-vendor is in a better position than a subsequent owner to prevent occurrence of major problems, the costs of poor workmanship should be his to bear.

139 Ariz. 242, 245, 678 P.2d 427, 430 (1984); *accord Columbia W. Corp. v. Vela,* 122 Ariz. 28, 32–33, 592 P.2d 1294, 1298–99 (App.1979).

¶ 31 Further, imposition of a duty of care does not present the risk of disproportionate and indeterminate liability that, as *Lips* recognized, is one of the principal reasons courts have historically refused to recognize a duty of care for economic losses. *See generally Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 444–48 (1931) (negligence claim against auditor asserted by party that loaned money to auditor's client in reliance on firm's audit of the client failed for lack of duty; law should not impose "liability in an indeterminate amount for an indeterminate time to an indeterminate class"); Restatement (Third) of Torts: Liability for Economic Harm § 1 cmt. c ("Restatement Third") ("Economic losses proliferate more easily than losses of other kinds. Physical forces that cause injury ordinarily spend themselves in predictable ways; their exact courses may be hard to predict, but their lifespan and power to harm are limited."). When, as here, a subsequent purchaser sues a homebuilder to recover the

monies he or she paid to repair latent construction defects that posed an unreasonable risk of harm to persons or other property the homebuilder's potential liability is limited; it faces only a single loss. As recognized by one leading commentator: "[T]he domino effect [that is, the danger of indeterminate liability] is unlikely in the [subsequent] home-buyer situation. That is a transferred loss situation, meaning that only one purchaser will be able to recover, whether that purchaser is the first purchaser or a later one." 3 Dan B. Dobbs et al., *The Law of Torts* § 651, at 601–02 (2d ed. 2011).

¶ 32 The majority notes, as Pulte has argued here, that its conclusion the Building Code and associated statutes and regulations do not support a public policy-based duty for economic loss is consistent with the approach taken by the Restatement Third. See *supra* ¶ 15. The Restatement Third has taken the position that, absent "a more specific rationale," duties to avoid the negligent infliction of economic losses should be "narrower" than duties to prevent physical harm. Restatement Third § 1, cmts. a & b. But, I believe the Building Code and associated statutes and regulations, which are consistent with the policy reasons articulated by the supreme court in *Richards,* present this "more specific rationale."

¶ 33 The majority further notes, as Pulte has also argued here, that the Restatement Third has specifically rejected imposing a duty of care on a homebuilder to subsequent purchasers for economic losses arising out of latent construction defects. See *supra* ¶ 15; Restatement Third § 6 cmt. c. Although Arizona courts will usually follow the Restatement, "we will not do so blindly. Rather, we must consider whether the Restatement position, as applied to a particular claim, is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged elsewhere." *Ramirez v. Health Partners of S. Ariz.,* 193 Ariz. 325, 332, ¶ 26, 972 P.2d 658, 665 (App. 1998) (citation omitted). Applying these considerations, I part company with the Restatement Third. As applied to the Sullivans' claim to recover the monies they spent to repair the retaining wall which, absent the

repair, presented a risk of harm to persons and property, the Restatement Third hardly furthers the interest of justice, see *supra* ¶¶ 26–27, and is contrary to Arizona law. See *supra* ¶ 25. Additionally, the position taken by the Restatement Third is grounded in large part on the view that recognizing a duty of care in this type of situation will impose indeterminate liability on a homebuilder. Restatement Third § 6 cmt. c. But, as discussed above, that is not the case. See *supra* ¶ 31.

¶ 34 The Restatement Third's position is also grounded on the view that a subsequent purchaser may have other ways to manage the risk of economic loss from latent defects, such as through inspection, insurance, or negotiations with the seller. Restatement Third § 6 cmt. c. I am not persuaded that the speculative possibility that a subsequent homebuyer might be able to protect against latent construction defects should negate the existence of a duty of care when, as Arizona courts have recognized, homebuyers are generally unable to protect themselves from such defects. *Richards,* 139 Ariz. at 245, 678 P.2d at 430; *Columbia W. Corp.,* 122 Ariz. at 32–33, 592 P.2d at 1298–99. Indeed, as one commentator has pointed out:

In every situation where economic losses occur, it is possible to say that the plaintiff could have entered into some type of contractual arrangement—e.g., an insurance policy, an indemnity agreement, or a release from liability—that would have mitigated the damage. To seize upon those hypothetical actions, which never came to pass, as a reason for applying the economic loss rule is to substitute imaginary remedies for real ones and pretend that the facts were other than those that actually occurred.

Vincent R. Johnson, *The Boundary–Line Function of the Economic Loss Rule,* 66 Wash. & Lee L.Rev. 523, 565 (2009).

¶ 35 Finally, the position taken by the Restatement Third is grounded on the belief that other legal theories, such as implied warranty, are better suited for the recovery of economic losses by a subsequent purchaser. Although the supreme court in *Sullivan v. Pulte Home Corp.* was not discussing the

issue presented here—the existence of a duty of care—but instead, the economic loss doctrine, it essentially rejected this same argument: "We are not persuaded that the economic loss doctrine should apply to bar the negligence claims simply because the Sullivans had a possible contractual remedy under an implied warranty claim." 232 Ariz. 344, 346, ¶ 13, 306 P.3d 1, 3 (2013). The Restatement Third's preference for limiting the recovery of economic losses caused by latent construction defects to contractual remedies under implied warranty principles is also grounded, once again, on concerns of indeterminate liability—a concern I do not share. And in my view, the Restatement Third's preference for implied warranty principles undermines the policies that support tort liability: that victims of harm should be compensated, wrongful conduct should be deterred, reasonable conduct should be incentivized, and losses should be placed on those who can best bear or distribute them and who are responsible for them. Jay M. Feinman, *The Economic Loss Rule and Private Ordering*, 48 Ariz. L. Rev. 813, 821 (2006).

¶ 36 Furthermore, recognizing a duty of care does not mean a subsequent purchaser will have an "easy go" at the homebuilder. As the Arizona Supreme Court explained in *Woodward*:

Negligence ... requires that a builder or contractor be held to a standard of reasonable care in the conduct of its duties .... Negligence in tort must establish defects in workmanship, supervision, or design as a responsibility of the individual defendant. Proof of defect alone is not enough to establish the claim.

141 Ariz. at 516, 687 P.2d at 1271 (quoting *Cosmopolitan Homes*, 663 P.2d at 1045). And, "in the context of the purchase of a used home, the owner must demonstrate that the defect is latent or hidden, and must show that the defect was caused by the builder." *Cosmopolitan Homes*, 663 P.2d at 1045.

¶ 37 For the foregoing reasons, a homebuilder should be subject to a duty of care, and thus answerable in negligence, to a subsequent homebuyer who is seeking to recover the monies the homebuyer spent in repairing dangerous latent construction defects that pose an unreasonable risk of, but have not yet caused, physical injury to persons or other property. Accordingly, the superior court should not have dismissed the Sullivans' negligence claims against Pulte.